[Crim. No. 213.   Fourth Appellate District.—September 22, 1931.]

THE PEOPLE, Respondent, v. MARTIN INGLES, Appellant.

Curtis Hillyer and Irve C. Boldman for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Thomas Whelan, District Attorney, and B. L. Comparet, Deputy District Attorney, for Respondent.

BARNARD, P. J.—The grand jury of San Diego County returned an indictment against Martin Ingles, Gladys Ingles and Linda Armstrong, charging in eight separate counts the crimes of conspiracy to commit the crime of grand theft, and grand theft. The odd-numbered counts charged the crime of conspiracy to commit grand theft from four separate persons or sets of persons. The even-numbered counts charged the commission of grand theft from these respective parties. Before trial, on motion of the People, counts I, II, V and VI were dismissed. During the trial the remaining counts were dismissed against all of the defendants, except the fourth and eighth counts against the defendant Martin Ingles. As it finally remained, the indictment in the fourth count charged Martin Ingles with feloniously taking the property of Lottie Dinklage and Charles H. Dinklage, consisting of a Republic of Cuba bond of the value of $12,000, and in the eighth count charged Martin Ingles with feloniously taking the property of Emma J. Peabody, consisting of a first mortgage of the value of $2,500. The defendant was convicted on the fourth and eighth counts, and this appeal is from the judgment which followed and from an order denying a motion for a new trial.

Appellant's principal contention is that the evidence is not sufficient to sustain the judgment, it being contended that it fails to show a felonious intent, corroboration of the testimony of the complaining witness that false pretenses were made, and that any fraud was committed. In short, the appellant argues "where a prosecutor gets out of the transaction just what he bargained for, no offense is committed". While this may be true, it cannot be said that a person gets what he bargains for although he gets the same article, if the article is of a value far less than that for which he bargained (*People* v. *Helmlinger*, 69 Cal. App. 139 [230

Pac. 675]). Appellant relies largely upon conflicts in the evidence, with which we cannot be concerned.

First considering the fourth count, there is evidence to show that Dinklage and his wife moved from Kansas City to San Diego in May, 1930; that on July 20, 1930, they met the appellant on a boat trip from San Diego to San Pedro and return; that on their arrival at San Diego the appellant entertained them at his home and for some time thereafter showered them with social attentions; that a day or two after the boat trip the appellant invited them to drive to a ranch owned by him, but instead took them to Glen Abbey memorial park; that he told them sections in that park were then worth $1,000 a section, and that he had recently sold one for $1,000; that there were twenty sections, belonging to a friend of his, which would be sold under a mortgage and lost unless immediately sold; and that he was going to take ten sections himself and would sell them the other ten for $400 a section. Appellant sold them ten sections for $4,000, taking in payment four bonds of the Republic of Cuba, having a face value of $1,000 each. The appellant continued to entertain the Dinklages with automobile rides, dinners and shows, and a few days after the other transaction he told them he was interested in increasing their income and traded them certain shares of stock in Imperial Royalties Company and in Monarch Royalties Corporation for Republic of Cuba bonds of the face value of $8,000. It appears that the appellant represented that the Imperial Royalties stock was worth $24 per share and the Monarch Royalties stock was worth $4 per share; that he gave them certain circulars issued by these companies; and that he pointed out to them that whereas their Cuban bonds brought them in $36.50 per month, this stock would bring them $62.10 per month. While appellant contends that no misrepresentations of fact were made, there is evidence to show that he represented that the cemetery sections belonged to a friend of his and were about to be sold under a mortgage; that he would take half of them and sell the other half to the complaining witnesses; and that the sections were worth $1,000 a section. Also, that he represented as a fact that the Imperial Royalties stock was worth $24 a share but he would sell it for $14 a share, and that the Monarch stock was worth $6, but would be sold to the complaining witnesses for $4 per share.

As to the truth of these representations there was evidence that the sections in Glen Abbey were at that time worth from $90 to $275. One witness, who was secretary of the company selling that property, testified that the value of sections in the block in which these sections were, was not more than $250 or $275. Another witness testified that their value was from $90 to not exceeding $150 per section. There was evidence of actual sales at $90. In reference to Imperial Royalties stock, there was expert evidence that in July and August, 1930, the bidding price on this stock was $12.50 to $15 and the asking price $16 to $19, and that the different portions of the Monarch stock was worth from 40 cents to $6. Summarizing the evidence, it appears that the sections in Glen Abbey and the stocks sold to the complaining witnesses by appellant, if as represented, would have been worth $17,794; that they were actually worth $8,649.80; and that the appellant received for them twelve bonds of the Republic of Cuba of the actual value of, and actually sold for, $11,280. ▮ Appellant insists that there was no corroboration as to the making of false pretenses in reference to the cemetery lots, no contention being made that there was a lack of corroboration in connection with the sale of the corporation stocks. In fact no such contention could be made as to the corporation stocks, as in addition to the testimony of several witnesses, the appellant had in his own writing made a list of the various stocks with the values represented, and with figures showing that the income from the stocks he was selling them would be $62.10 per month as opposed to $36.50 per month income on the Cuban bonds. Both of these transactions were involved in the fourth count, and if no corroboration existed as to the making of the false pretenses in reference to the cemetery lots, the evidence as to the other parts of the transaction would still be sufficient to support the judgment as to that count. In addition, in reference to the cemetery lots, it appears that the appellant signed an agreement to sell those lots to the Dinklages, in which he sets forth that he "also agrees that $400 per section is under the regular market price for same". We think that this, with the other circumstances shown by the record, constitutes ample corroboration (*People* v. *Mace,* 71 Cal. App. 10 [234 Pac. 841]). There is ample evidence in the record that the

representations made were believed by the other parties and relied upon by them, and that the exchange would not otherwise have been made.

Appellant urges that no criminal intent is shown. It is well established that criminal intent may be inferred from the general circumstances surrounding the transactions, and that other similar transactions carried on by a defendant are sufficient to prove guilty knowledge and criminal intent (*People* v. *King,* 23 Cal. App. 259 [137 Pac. 1076]; *People* v. *Helmlinger, supra*). The record in this case contains nearly 1100 pages, and in addition to evidence of similar misrepresentations made to a number of other people, the surrounding circumstances are amply sufficient to justify the jury in ascribing to the appellant the requisite knowledge and intent.

In reference to the eighth count, wherein the appellant was charged with feloniously taking the property of Emma J. Peabody, it appears that the appellant represented to her that a block of stock was being sold to liquidate an estate; that the appellant had bought all that he could and had borrowed $2,500 more to put into this stock; that there was a little more of the stock than he could handle which he would let her have; that the stock was at that time worth at least $3; and that he would let her in on it at $1.50. From the evidence it appears that she paid $2,700 for stock which was of the value of $1332. For the reason that the sentence on the eighth count was made to run concurrently with that on the fourth count, we feel it would serve no useful purpose to make any extended analysis of the evidence in reference to this count. However, no claim is made of lack of corroboration as to the making of the false pretenses in connection with this count, and the other questions raised are similar to those urged in connection with the fourth count. We feel compelled to hold that the evidence is sufficient to sustain the judgment under both counts.

The appellant strenuously maintains that the district attorney was guilty of misconduct during the trial, sufficiently prejudicial to require a reversal. One witness, Julia Daniels, testified that she purchased a section in Glen Abbey memorial park for $360, as an investment; that after being warned by her banker the deal was changed

and she took only one-third of a section for $120, for her own use. Subsequently she found that the deed given her covered wrong lots and she complained to the district attorney. Her examination shows the following: "Q. What was said or done in the bank? A. Well, the banker said that he thought that I had better know more about this deal, because this was the same gentleman that had cheated a Mrs. Edwards out of all she had." Appellant now urges that this evidence had no relation to the case, was introduced for the purpose of prejudicing the defendant, and that the introduction thereof constitutes prejudicial misconduct on the part of the district attorney. In the first place, it may be observed that at the time this evidence was offered a number of counts remained in which the appellant and two other persons were charged with conspiracy to take the property of certain other people. It by no means appears that this evidence was not admissible at that time. It does appear that no objection was made to the testimony complained of at the time it was given; that it was not assigned as misconduct at any time during the trial; and that the appellant did not ask that the jury be instructed to disregard it. It appears that after the witness had been cross-examined and recross-examined by the appellant, a motion was made to strike the testimony. It further appears, that after the conspiracy counts were dismissed this testimony was stricken from the record, together with all of the other testimony given by this witness. It also appears that the jury was very definitely and pointedly instructed to disregard this testimony, and · on several occasions was instructed to disregard all evidence which had been stricken. It has been held that complaint of misconduct should be so assigned during the trial. (*People* v. *Beggs,* 178 Cal. 79 [172 Pac. 152]; *People* v. *Vaughn,* 25 Cal. App. 736 [147 Pac. 116]; *People* v. *Mancusco,* 23 Cal. App. 146 [137 Pac. 278].) While conceding the rule, appellant relies upon the claim that an exception exists when the facts are such that no instruction that could be given by the trial court would serve to cure the error, citing several cases including *People* v. *Adams,* 92 Cal. App. 6 [267 Pac. 906]; *People* v. *De Vries,* 52 Cal. App. 705 [199 Pac. 867]; *People* v. *Hail,* 25 Cal. App. 342 [143 Pac. 803]; *People* v. *Wells,* 100 Cal. 459 [34 Pac. 1078]; *People* v. *Pantages,* 212 Cal. 237 [297 Pac.

895]. It may be conceded that certain acts of misconduct on the part of a district attorney may be of such a character that their prejudicial effect could not be removed by any instruction which the court might give. We think this is not a case of that character. Even if it were held that it was not admissible at the time it was offered, nothing appears to indicate that this testimony was offered for a wrongful purpose, or that the offering thereof constituted misconduct on the part of the district attorney. When the counts in support of which it was offered were stricken, the testimony was also struck out. The court fully and emphatically instructed the jury to disregard the same and it must be presumed that the jury obeyed these instructions. Nor do we think its previous admission could have had such a prejudicial effect as could not be cured. We are unable to agree with appellant that the question of his guilt was so close that it appears that a conviction could not have been had, had this evidence not been received.

A further claim of misconduct on the part of the district attorney is made in regard to the following. During the trial the attorney for appellant referred to the testimony of Mrs. Daniels, which had been stricken out, and asked the privilege of asking the witness then on the stand a question in relation to a portion of this testimony. The deputy district attorney then stated: "If the court please, if Mr. Hillyer is going into that, I would like to go into the conversation at the bank in the presence of this defendant in regard to Mrs. Edwards of La Mesa, being swindled, what the banker said in his presence". Counsel for appellant then assigned this as deliberate misconduct on the part of the district attorney and asked that the jury be admonished to disregard it. The court then instructed the jury as follows: "I think the statement was entirely improper and the jurors will entirely disregard Mr. Muir's statement, and refrain from drawing any inference adverse to the interests of the defendant from any suggestion contained in Mr. Muir's statement to the effect that anybody had been swindled."

We think this instruction, asked for and given, was sufficient and that no prejudicial error appears. (*People* v. *Warr*, 22 Cal. App. 663 [136 Pac. 304]; *People* v. *Ong Git*,

23 Cal. App. 148 [137 Pac. 283]; *People* v. *Ward,* 105 Cal. 335 [38 Pac. 945].)

■ Appellant next urges that he was denied a fair trial through the fact that evidence was introduced upon the charges of conspiracy, and later stricken, giving him no chance to refute the same. The appellant himself had previously moved to strike out most of the evidence so stricken. When the motion to strike was later made by the prosecution, the attorney for appellant stated that he had no objection to the granting of the motion. No objection was made at any time to the striking out of this evidence, and the action appears proper since the counts under which it was introduced had been dismissed. It further appears that most of the facts so testified to, were actually denied by the appellant during his testimony. The jury was carefully instructed to disregard the testimony stricken and we find no error therein. (*People* v. *Foster,* 198 Cal. 112 [243 Pac. 667].) ■ In connection with this point appellant argues that appellant and his wife could not legally be charged with conspiracy under the rule laid down in *People* v. *Miller,* 82 Cal. 107 [22 Pac. 934], and that this conclusively shows that no evidence should have been received upon the conspiracy charges. Conspiracy was also charged against appellant in connection with a third person, and no reason appears why evidence in support thereof was not admissible.

No other points are raised which require consideration. In our opinion the evidence supports the verdict and no errors appear sufficiently prejudicial to require a reversal. The order and judgment are affirmed.

Marks, J., and Jennings, J., concurred.