[Crim. No. 3168. Second Appellate District, Division Two.—February 21, 1939.]

THE PEOPLE, Respondent, v. WILLIAM D. BARNETT, Appellant.

Morris Lavine for Appellant.

Earl Warren, Attorney-General, R. S. McLaughlin, Deputy Attorney-General, Buron Fitts, District Attorney and Jesse J. Frampton, Deputy District Attorney, for Respondent.

CRAIL, P. J.—This is an appeal from a conviction of William D. Barnett on each of two counts of an information which charged grand theft.

It is the contention of the appellant that the theory upon which the prosecution proceeded and the only one which its evidence tended at all to support was that the money of the complaining witness, Mary Hill, was obtained by false pretenses; that the only evidence of the false pretenses was the testimony of Mrs. Hill, and that there was no corroboration such as is required under section 1110 of the Penal Code.

It is the contention of the attorney-general, however, that the defendant was convicted of the crime of larceny by trick and device, a crime for the conviction of which no corroboration was necessary.

The law of this state is (1) that where a person parts with the possession of his money to the defendant with the intent that it shall be used by the defendant for a specific and limited purpose, and at the time the defendant receives

the possession of said money he intends to convert said money to his own use, he is guilty of larceny by trick and device; and that (2) when a person parts with both the title and possession of his money to the defendant and said party has been induced by the defendant through false pretenses to so part with both his title and possession, then he is guilty of obtaining money by false pretenses. (26 A. L. R. 381 (n), and California cases cited on page 382.)

In the case of *People* v. *Curran,* 24 Cal. App. (2d) 673 [75 Pac. (2d) 1090], this court said, ''The distinction between the offenses of larceny and of obtaining money by false pretenses depends upon the intention with which the owner of the property parted with it to the person taking it. 'In larceny, the owner of the thing has no intention to part with his property therein to the person taking it, although he may intend to part with the possession. In false pretenses the owner does intend to part with his property in the money or chattel, but it is obtained from him by fraud.' (*People* v. *Delbos,* 146 Cal. 734, 736 [81 Pac. 131].) ''

█ Adapting the law to this case, then if Mary Hill parted with the money to the defendant with the intention that the money was not to be his personally, but was to be used by him for her to purchase certain oil leases, and the money or a large part of it was not so used by the defendant, but was converted to his own uses, then he is guilty of larceny by trick and device; but if Mary Hill, at the time she turned the money over to the defendant, intended to part both with the title and possession of the money to the defendant and she had been induced by the defendant through false pretenses to so part with both her title and possession, then the defendant would be guilty of obtaining money under false pretenses.

It is the duty of this court to view the evidence in the light most favorable to the People. Mrs. Hill was a widow and met the defendant in his capacity as a salesman selling land located in New Mexico. Four days after their meeting the defendant and his codefendant Amigo came to her home, at which time defendant stated that Amigo was a mining man and down here to buy up some oil leases and make some money out of them; that the defendant, Mrs. Hill and Amigo could get forty acres of land in McKinley County for $1,000; that the defendant would put up $333 and Mrs. Hill and

Amigo would each put up a like amount to buy said forty-acre lease. Mrs. Hill said she would consider it. Two days later defendant called at her home again in connection with their joint purchase of said forty-acre lease, at which time she delivered to the defendant $5 to apply toward her share and agreed to deliver the balance of $328 later. The forty-acre lease was to be purchased in the name of Mrs. Hill and Amigo and a separate agreement was to be executed evidencing defendant's one-third interest in said lease. On April 2, 1936, defendant and Amigo called on Mrs. Hill at her home, at which time she delivered to defendant $328 in cash, representing the balance due from her on the purchase price of said McKinley County lease. On April 9th, defendant and Amigo again called on Mrs. Hill at her home, at which time defendant presented to her three copies of a document, all three copies of which were signed by Mrs. Hill and codefendant Amigo, transferring to defendant a fully paid up one-third undivided interest in said forty acres. Mrs. Hill intended and the defendant and Amigo each understood the money was delivered to them and was to be used by them as the joint purchase price of the lease from a third party. Mrs. Hill specifically testified that she did not intend to part with the title to her money to the defendant. Defendant had previous to his meeting Mrs. Hill purchased said forty-acre lease from one Leona Douglas for the sum of $40, and had caused the title to said lease to appear in the name of the witness Starr without Starr's knowledge or consent, and on April 7th defendant secured Starr's signature to an assignment in blank to said forty-acre lease and later filled in the names of Mrs. Hill and Amigo, as assignees, thus making it appear as though said assignment of lease had been purchased from a man by the name of Starr, when in truth and in fact neither of the defendants had paid Starr anything for said assignment. The defendant and his codefendant represented that each of them was investing the sum of $333 together with Mrs. Hill as part of the purchase price of said lease, when in truth and in fact they already owned said lease, and instead of the purchase price being $1,000, it was only $40. From a statement of the evidence which we have set forth it is clear and unequivocal that Mrs. Hill parted with the possession of the money to the defendant with the understanding that he would use her money in connection with

money advanced by himself and his codefendant for the purchase from some third person of the oil lease. She did not purchase the lease from the defendant or Amigo and therefore never passed title of such money to the defendant or to Amigo. The same situation exists and is true with regard to count two of the information.

In our view, therefore, there is substantial evidence to sustain the implied findings of the trial court that the defendant was guilty of larceny by trick and device.

In his reply brief the defendant contends that the theory upon which the case was tried in the superior court was that of obtaining money by false pretenses, and that the People cannot be heard at this late date to claim that the conviction was upon the ground of larceny by trick and device. In this connection we find in the record that during the examination of the first witness the following took place: "Mr. Hess [attorney for one of the defendants] : . . . If Mr. Frampton will be fair enough to say that his case is false representations— Mr. Frampton [Deputy District Attorney] ; No, I will not say that. I deny it." When the second witness was on the stand the following occurred: "Mr. Hess: . . . Now, the prosecution will admit that the information is based upon a charge of grand theft involving false pretenses. . . . and Mr. Frampton will admit to the court that that is the nature of the charge here. Mr. Frampton: I don't make any such admission. . . . our theory is grand theft." There are other and similar statements in the record which indicate that the case was not being tried on the theory that the money was obtained under false pretenses but as a grand theft case by trick and device.

The defendant also contends in his closing brief that there is no proof that Barnett intended to steal Mrs. Hill's money. The evidence is that he obtained from her $333 with which to purchase for her from third persons a one-third interest in an oil lease which he actually purchased for the sum of $40, and that he did not return to her any of the balance of the money. A person is presumed to intend to do that which he voluntarily and wilfully does in fact do. The intention to steal is inferred from all the facts and circumstances in evidence bearing upon the question.

The defendant next contends in his closing brief that Mrs. Hill received all that she bargained for. She placed her

money in the hands of the defendant to be used for a specific purpose. It was not so used and it was not returned to her.

Judgment affirmed.

Wood, J., and McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 6, 1939, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 20, 1939.