**LACK v. BORSUM.**

Civil Action No. 464.

District Court, W. D. Louisiana, Opelousas
Division.

March 10, 1942.

Lamar Cecil, of Beaumont, Tex., and
Dubuisson & Dubuisson, of Opelousas, La.,
for plaintiff.

Hawkins & Tritico, of Lake Charles,
La., for defendant.

DAWKINS, District Judge.

Basing jurisdiction on the ground of
diverse citizenship, plaintiff sues for com-
missions alleged to have been earned under
the following circumstances:

He was employed by defendant as a
broker to sell a mineral lease on lands in
Louisiana. The agreement, made in the
"San Jacinto Hotel in Houston, Texas",
was to sell the lease to Superior Oil Com-
pany for the sum of $300,000 "payable in
cash or in oil, if, as, and when produced",
for a commission of one-sixth of the pur-
chase price. Immediately thereafter, plain-
tiff took the matter up with the "officers of
the Superior Oil Company in Houston,
Texas", who made a counter offer of
$150,000 payable out of 1/24th of seven-
eighths of the oil so produced, which was
accepted by defendant; and it was "under-
stood" that petitioner's commission should
be $25,000 "to be paid out of monies re-
ceived from the said oil payments". In the
alternative, plaintiff prays that, if it should
be found that no specific commission was
agreed upon, then he recover in the sum of
$15,000 on a quantum meruit.

Defendant has moved to dismiss the com-
plaint on the grounds (1) that it states no
facts upon which a recovery can be had,
and (2) because the claim has prescribed.

1. The first exception is based upon the
fact the petition does not allege that plain-
tiff was a licensed broker under the law of

Texas where the employment was made, and by which the matter is governed; but if it should be held that the law of Louisiana controls, then for similar reasons the demand can not be sustained.

In determining whether the Texas or Louisiana law applies, the question must be treated the same as would a court of this State under the circumstances disclosed. Where jurisdiction depends upon diverse citizenship, a Federal court should adjudicate "rights precisely as would a tribunal of the state [of Louisiana], according to the laws * * *. But in case of contract the foreign law may, by the act and will of the parties, have become part of their agreement, and in enforcing this, the law of the forum may find it necessary to give effect to a foreign law * * *". Pritchard v. Norton, 106 U.S. 124, 129, 1 S.Ct. 102, 105, 27 L.Ed. 104. The allegations of fact above recited establish clearly that not only was the agreement with the broker or agent entered into in Texas, but that it was performed, in so far as plaintiff and defendant were concerned, in that state. In other words, the lease was sold to the Pure Oil Company in Texas. It is true that the land is in Louisiana and that payment both of the price to defendant and of the commission to plaintiff was to be derived from oil produced therefrom, but only to this extent can it be said that it was to be performed in this State. In this situation, can it be contended with any degree of certainty that it was the intention or in the contemplation of the parties that performance of the agreement in so far as earning the commission and becoming an executed contract was concerned, was to be had in Louisiana? I think not. On the contrary, it was performed promptly in Houston, Texas, and everything done by the plaintiff which was necessary to earn his commission. The validity of the contract is governed by the law of the place where it is made, unless it clearly appears that it was entered into with respect to or to be governed by the laws of some other jurisdiction. Vol. 17 C.J.S., page 345, verbo Contracts, Sec. 16; Vol. 15 C. J.S., pages 880, et seq., verbo Conflict of Laws, Sec. 11. My conclusion is that the matter is governed by the Texas laws.

The Act of May 23, 1935, of the Texas Legislature, C. 100, which became effective on that date, declares that "no dealer, agent or salesman shall sell or offer for sale any securities" without a permit from the Secretary of State. In Sub-section (c) of Section 2 of the same Act a "dealer" is defined as including "every person * * * who engages * * * in selling, offering for sale * * * any security or securities within this State." The term "security" includes "any instrument representing any interest in or under an oil, gas or mining lease, fee or title * * *". Subsection (a). Anyone violating the provisions of the statute are subjected to heavy penalties. In Kadane et al. v. Clark, 135 Tex. 496, 143 S.W.2d 197, 199, the Supreme Court of Texas had occasion to construe this statute in its application to a situation identical with the one now under consideration, and held both that a mineral lease was a security within the meaning of the Act, and that a broker who had not complied with its terms was barred from recovering the fees for his services. In disposing of the matter, the court spoke in part as follows:

"The history relating to the sale of securities in this State is well known. The development of the oil industry emphasized the necessity of regulating sales of securities issued on oil leases and other instruments relating to the oil business. An enormous number of worthless securities were sold to the public, and nothing was realized on many of these investments by the buyers. There was no restraint upon such sales nor upon those who made them. The public was notoriously imposed upon, and ofttimes people were defrauded out of their life's savings. There was a public demand for protection against such sales. The legislature sought to cope with the situation by enacting the Securities Act. This law defines specifically the requirements necessary to authorize the sale of securities thereunder. It definitely prohibits any person from making sales of certain securities without first complying with the terms of this Act. The penalty for its violation is particularly heavy, and anyone who violates such law 'shall be deemed guilty of a felony and, upon conviction thereof, shall be sentenced to pay a fine of not more than One Thousand Dollars ($1,000), or imprisoned in the penitentiary for not more than two (2) years, or by both such fine and imprisonment.' Section 30.

"Clearly the outstanding purpose of this Act is for the protection of the public. Its object is to regulate the sale of securities and to protect the public from fraud and

imposition by those engaged in selling worthless securities. The public policy of this State with reference to such sales is clearly expressed in this Act. That the State has power to enact such regulations for the sale of securities is well established. Hall v. Geiger-Jones Co., 242 U.S. 539, 37 S.Ct. 217, 220, 61 L.Ed. 480, L.R.A.1917F, 514, Ann.Cas.1917C, 643; State v. Nordstrom, 169 Minn. 214, 210 N.W. 1001; State v. Pullen, 58 R.I. 294, 192 A. 473; People v. Estrada, 24 Cal.App.2d 341, 74 P.2d 1084, 1085; People v. Daniels, 25 Cal.App.2d 64, 76 P.2d 556.

"The statute is strictly penal in nature, and was enacted solely to protect the interests of the public. While the law does not specifically provide that a contract made in violation of this Act shall be void, yet, when the Act as a whole is read, and the purposes for which it was passed are considered, we think the very letter and spirit of the law is to absolutely prohibit sales of securities not made under the terms of this law. The very language used in the Act excludes the theory that it was enacted in any manner as a revenue measure. The construction of this Act resolves itself into one of legislative intent, which is to be determined from the terms used and the object in view in enacting the law. The conclusion is inescapable that a contract made in violation of its terms is not enforcible. Any other construction would nullify the very purpose for which it was enacted.

"The State has the power to enact statutes to protect the public from fraud and imposition, prohibiting certain things from being done and imposing a penalty. The great weight of authority sustains the rule that the legislature has the power to enact such laws, and that all contracts in violation thereof are void. Rogers v. Traders & Gen. Ins. Co. [135 Tex. 149], 139 S.W.2d 784, 128 A.L.R. 1305; Pollock's Principles of Contract, 293; Drury v. Defontain, 1 Taunt. 136; Myers v. Meinrath, 101 Mass. 366, 3 Am.Rep. 368; Lyon v. Strong, 6 Vt. 219; Harris v. Runnels, 12 How. 79, 13 L.Ed. 901; Gibbs v. [Consolidated] Gas Co., 130 U.S. 396, 9 S.Ct. 553, 32 L.Ed. 979; Miller v. Ammon, 145 U.S. 421, 12 S.Ct. 884, 36 L.Ed. 759, and cases cited; Cashin v. Pliter, 168 Mich. 386, 134 N.W. 482, Ann.Cas.1913C, 697; Shattuck v. Watson, 164 Mich. 167, 129 N.W. 196; 17 C.J.S., Contracts, p. 656, § 272; 12 Am.Jur., p. 658, § 163.

"The spirit of comity that exists between the Court of Criminal Appeals and the Supreme Court has long been recognized, and each court recognizes the supreme authority of the other court in certain fields. This Court has followed, and will follow, the Court of Criminal Appeals in its interpretation of penal laws. Caples v. Cole, 129 Tex. 370, 102 S.W.2d 173, 104 S.W.2d 3; Roberts v. Gossett, Tex.Civ.App., 88 S.W. 2d 507; 11 Tex.Jur., p. 853. In two well-considered cases the Court of Criminal Appeals has construed and upheld the validity of this Act. That court has held that an assignment of an oil and gas lease is a security, and has upheld convictions for violations of the law. Atwood v. State, 135 Tex.Cr.R. 543, 121 S.W.2d 353; Muse v. State, 137 Tex.Cr.R. 622, 132 S.W.2d 596.

"In our opinion, the construction given this Act by the Court of Criminal Appeals conflicts with the construction given it by the Court of Civil Appeals in this case. We are constrained, in view of the long-existing comity between the two courts, to sustain the holdings of the Court of Criminal Appeals in the two cases above cited.

"Under the undisputed facts of this case, and under the above-mentioned Act, as construed and interpreted by the Court of Criminal Appeals in the Atwood and Muse cases, supra, Clark acted in violation of the criminal law in doing the things that he claims he did to earn the commissions here sued for. It follows that he has no legal claim on which a judgment in his favor can stand."

▉▉▉ This decision was before the passage of the amendatory act of May 22, 1941, Vernon's Ann.Civ.Tex.St. art. 600a, which not only prohibits anyone suing in the courts of the State to recover such a commission, but even makes contracts of purchase of such securities voidable at the instance of the purchaser with elaborate provisions for recovering the price, interest, etc. As a matter of comity, courts of other states will not enforce contracts thus made contrary to the public policy of a sister state.

I do not find it necessary to consider the law of Louisiana upon the subject, or the question of prescription for the reason that the agreement sued upon was void ab initio.

For the reasons assigned, the motion to dismiss will be sustained.