[Crim. No. 5101. In Bank. Nov. 28, 1950.]

THE PEOPLE, Respondent, v. HOWARD JONES,
Appellant.

Horace Appel for Appellant.

Fred N. Howser, Attorney General, and Donald D. Stoker, Deputy Attorney General, for Respondent.

SPENCE, J.—Defendant was charged with two counts of grand theft, each relating to a separate transaction with a different person: (1) $6,000 from E. Y. Masi and (2) $4,000 from Thomas W. Patterson. He pleaded not guilty to both counts and waived a trial by jury. The case was submitted upon the testimony taken at the preliminary hearing and additional evidence introduced by both parties. The court found defendant guilty on both counts, and granted leave to file an application for probation, upon the hearing of which the proceedings were suspended and defendant was placed on probation for five years. Defendant made a motion for a new trial, which was denied. He has appealed from the order denying his motion for a new trial and has purportedly appealed from an alleged "judgment of sentence and conviction." Since the court did not pronounce judgment but suspended proceedings and granted probation, the purported appeal from the judgment will be dismissed. (*People* v. *Guerrero*, 22 Cal.2d 183, 184 [137 P.2d 21].) There remains for consideration only the appeal from the court's order denying defendant's motion for a new trial. (Pen. Code, § 1237.)

 As ground for reversal, defendant argues the single point that the evidence was insufficient to sustain his conviction of grand theft "sounding in false pretenses." In resolving this issue, it is the settled rule that an appellate court "will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by" the trial court to warrant its implied findings, and before they "can be set aside . . . it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778].) Applying this rule, defendant's claim as to the insufficiency of the evidence cannot be sustained.

Defendant and two others, Stock and Parsons, were copartners engaged in the conduct of an insulating business under the name of Sun Supply Company. After some few weeks of operation, defendant induced Masi and Patterson

to contribute certain sums of money to the enterprise and to become members of the firm. Their checks were made payable to the Sun Supply Company and were deposited in the partnership bank account. Part of the money so obtained from Masi and Patterson was used to discharge preexisting debts of the partnership, including a chattel mortgage on partnership property and the reimbursement of defendant for funds he had advanced to the partnership business; and part was paid during the existence of the augmented partnership to each of the five partners as salary or compensation for services rendered. The partnership terminated some 30 days after Masi and Patterson had invested their money therein, and its business and affairs were turned over to a law firm for the purpose of dissolution. After payment of the existing debts and cost of the liquidation proceedings, the remainder was divided equally four ways among defendant, Stock, Patterson, and Masi, with Parsons not receiving any part of such proceeds inasmuch as he had not invested any money in the business.

It appears from the testimony of Masi and Patterson that defendant induced their advancements of money upon the following representations: That the business was "a gold mine," was "making nothing but money," and "there wasn't a chance of losing"; that the equipment of the firm "was all paid for"; and that more money was needed to secure new equipment—particularly "another truck"—required because of the volume of business being done by the firm. In reality, the firm had so little business that the equipment already possessed by it was sufficient to take care of its needs, covering advance orders for but "three or four days" instead of the represented "month's steady work" as already assured, with a single truck making an "average" return of "$200 a day." Masi accordingly advanced $6,000 and Patterson advanced $4,000. Upon objection to Patterson entering into the business, Masi was given a refund of $1,000. By way of salary and pro rata share upon dissolution of the business, Masi received approximately another $1,000 and Patterson $900. The management of the business was left to defendant and his two original partners. Masi and Patterson did not desire, and did not have, authority to sign checks on the partnership bank account, apparently on the ground that there were already "enough" names on the signature card.

The crimes of larceny, embezzlement, obtaining money by false pretenses and kindred offenses are now all included

under the designation of theft (Pen. Code, § 484; *People* v. *Myers,* 206 Cal. 480, 483 [275 P. 219]), but the elements of the several offenses have not been changed (*People* v. *Selk,* 46 Cal.App.2d 140, 147 [115 P.2d 607]). ▇ So pertinent to the establishment of defendant's guilt in proof of his commission of the crime of grand theft ''sounding in false pretenses'' are these considerations: (1) whether there were representations of past events or existing facts as distinguished from a mere expression of opinion or promise of future action (22 Am.Jur. § 12, p. 450; 12 Cal.Jur. § 4, p. 452; *People* v. *Daniels,* 25 Cal.App.2d 64, 71-72 [76 P.2d 556]), though a promise, if unconditional and made without present intention of performance, will constitute actionable fraud (*People* v. *Gordon,* 71 Cal.App.2d 606, 624-625 [163 P.2d 110]; *People* v. *Mason,* 86 Cal.App.2d 445, 449 [195 P.2d 60]); (2) whether the representations were made with intent to defraud the owner of his property (22 Am.Jur. § 23, p. 456; 12 Cal.Jur. § 9, p. 457; *People* v. *Bowman,* 24 Cal. App. 781, 785-786 [142 P. 495]; *People* v. *Boyd,* 67 Cal.App. 292, 295 [227 P. 783]); and (3) whether the owner was actually defrauded in that he parted with his property—both possession and title—in reliance upon the false representations (22 Am.Jur. § 25, p. 457, § 26, p. 458; 12 Cal.Jur. § 10, p. 457; *People* v. *Barnett,* 31 Cal.App.2d 173, 175 [88 P.2d 172]).

▇ There appears to be abundant evidence to support the trial court's implied findings that false representations were made by defendant with intent to defraud Masi and Patterson, that the latter two men believed and relied upon such representations and while so believing, parted with the sums of $6,000 and $4,000, respectively. From the record it might justifiably be inferred that defendant not only fraudulently inveigled Masi and Patterson to join the partnership and pay over their moneys, but that he had planned to use a large part of their investment to discharge old debts of the firm before they would have time to discover his fraud; that defendant had no intention of purchasing new equipment with their money but stealthily intended to, and did cause, the mortgage indebtedness incurred by himself and Stock to be satisfied promptly with the new funds, as well as his own previous advancements to the firm, and that commensurate with the amount of business being done, no new equipment was required at all; that neither defendant nor

his original partners took Masi and Patterson into the inner workings of their organization but that defendant, by artful design and suggestion through "big sales talk" as to the earning capacity of the firm based on alleged past business receipts, induced the newly-found investors to be so preoccupied with dreams of rich profits that they were led to believe that it would be to their financial advantage to leave the handling of details to defendant and his original partners; that to this end it was arranged that defendant and his original partners would write all checks against the partnership bank account to the exclusion of Masi and Patterson; that insofar as Masi and Patterson were concerned, the Sun Supply Company was a mere ruse, used by defendant as a scheme for increasing the number of partners and so augmenting the cash assets of the firm at a time when it was in a precarious financial condition; that defendant's pretended business plans for expansion of the business had no foundation in fact, and accordingly Masi and Patterson were not placed in positions of responsibility whereby they might know at once the disposition of their invested capital in the misrepresented enterprise. Both Masi and Patterson testified that defendant had taken them to visit the premises of the business, a small plant, which "looked like business had just started" but which defendant represented as having such a rosy future on the basis of "money . . . that they were [then] making" out of the venture that Masi and Patterson were induced to make their respective investments so that the alleged needed additional equipment could be purchased; and that it was not until the receipt of a financial statement from the bookkeeper some three or four weeks after their respective advancements of funds that Masi and Patterson learned where their money was going—to pay off indebtedness incurred for equipment purchased by the original partnership, and that no second truck or other equipment was bought after their investments. Defendant's statements as to the amount of business being done by the firm and the need for more equipment to meet the alleged advance orders disclose defendant's intent to defraud by causing Masi and Patterson to part with their money for an interest in an enterprise of doubtful and misrepresented value. ■ Masi and Patterson corroborated each other in their testimony as to the substance of defendant's false representations (*People* v. *Helmlinger,* 69 Cal.App. 139, 142 [230 P. 675] ; *People* v. *Mace,* 71 Cal.App. 10, 20 [234 P. 841] ), and defendant does

not dispute that "one victim could corroborate the other" in satisfying the evidentiary requirement contemplated by the law (Pen. Code, §§ 484, 1110; *People* v. *Mason, supra,* 86 Cal.App.2d 445, 449).

However, defendant maintains that his conviction may not be sustained because the evidence does not show that *he* acquired the money of Masi and Patterson or appropriated or converted it to his own use. He concedes that Masi and Patterson relied on his representations in making their investments in the business but he argues that they parted "with the possession of and title to their money to [the] partnership," of which they then became members, and not to him; that the "moneys of *all* partners were dissipated in the conduct of the partnership, [which thereupon] was dissolved," and "nowhere in the evidence does it appear that [he] received any moneys or took any moneys from the partnership or from the complaining witnesses." In support of his position he relies on the case of *People* v. *Cravens,* 79 Cal. App.2d 658, 662-663 [180 P.2d 453], for the proposition that "the procuring of money to be contributed to the capital of a partnership of which the victim is a member cannot constitute the crime of obtaining money by false pretenses because the victim as partner retains an interest in the fund." But an analysis of the factual situation in that case demonstrates it to be readily distinguishable. There the deceived party, one Mrs. Reame, was fraudulently induced by the appellant to enter into a partnership with him for the manufacture of adhesive gauze bandage, upon the representation that he had been successfully engaged in that business in the past and "knew everything there was to know about [it]." Accordingly, she deposited certain funds "in a bank account subject to withdrawal by herself, her son and the appellant." She drew a few checks on this account for her own living expenses and personal use, but the large part of the fund was used to pay "partnership expenses" with the "bulk of the money . . . drawn out by checks signed by appellant." (P. 661.) Upon exhaustion of the partnership funds and the failure of the business, the fraudulent character of the transaction was presented to the court for disposition upon the charge of grand theft. In passing upon the validity of appellant's conviction upon the theory that he had obtained money by false pretenses, the court observed, at page 663, that "the crime . . . was not complete until the withdrawal

and appropriation of the money by appellant''; that ''so long as the money remained in the bank account it was subject to Mrs. Reame's power of withdrawal and she was deprived of neither title nor possession''; and that she had actual control of the funds at all times while appellant never withdrew or appropriated to his personal use any part of it. The conviction was reversed because there was ''no substantial proof . . . in the record of any particular withdrawal and appropriation by appellant'' and appellant's guilt of ''any crime with regard to Mrs. Reame's money'' could not be established in such condition of the evidence. (P. 663.)

Moreover, in so discussing the nature of the criminal charge against the appellant in the Cravens case, the court expressly noted at page 663: ''We are not satisfied that proof that the wrongdoer afterwards converted the partnership property to his own use while the victim was still subject to the influence of his false pretenses would not constitute the crime of obtaining money or property by false pretenses . . . [Otherwise] any confidence man could safely operate through the medium of forming a partnership with his victim and then appropriating the assets of the partnership . . . That the wrongdoer gets the property in two steps rather than one where a partnership with his victim is formed should not absolve him of the crime of obtaining money or property by false pretenses where the false pretenses continue to operate up to the moment of his wrongful appropriation of the partnership assets contributed by his victim.'' ▮ So within this rationale is the present case where defendant, while Masi and Patterson were still under the influence of his false pretenses, converted the property to his own use, not only in the reimbursement of his previous advancements to the firm ($1,200) but also in the discharge of mortgage obligations of the original partnership of which he was a member ($2,979.72), for which indebtedness the partnership's equipment was pledged as security. Yet Masi and Patterson were led by defendant to believe that for their investment not only would they as partners receive the benefit of the firm's present equipment, as then allegedly owned outright by it, but in addition they would have the benefit of the new equipment to be purchased with their money to meet the falsified expanding needs of the business.

▮ Furthermore, in contrast with the situation in the Cravens case, here Masi and Patterson, the deceived parties, did not have actual control of the partnership funds at any

time after they had advanced their capital to the partnership and became members thereof. While it is true that, according to the evidence, they refused the privilege of having their names on the signature card of the bank as authorized to sign checks on the partnership account, the record likewise reflects that such refusal was made at a time when Masi and Patterson were "still subject to the influence of [defendant's] false pretenses."

Also, contrary to the Cravens case, defendant's appropriation of the partnership funds as augmented by the investment of Masi and Patterson was definitely established in the amounts above set forth, with the respective withdrawals being made within a few days after the capital contribution in question. Under such circumstances, it is not necessary that the money was obtained by defendant for himself, but it is sufficient if it appears that as the result of his false representations, the money was "delivered to another, either for the benefit of that other or for [defendant's] benefit." (*Levy* v. *Industrial Finance Corp.*, 16 F.2d 769, 771; *People* v. *Woods,* 59 Cal.App. 740, 742 [212 P. 41]; see, also, *People* v. *Rabe,* 202 Cal. 409, 423 [261 P. 303]; *People* v. *Coffelt,* 140 Cal.App. 444, 449 [35 P.2d 374].) So here, defendant through fraudulent representations induced Masi and Patterson to deliver their money to the partnership for its benefit as originally formed, and the use of such funds in the payment of its old debts redounded directly to defendant's benefit. From such considerations, as the distinction was noted by the court in the Cravens case at page 663, it might readily be inferred that "the partnership was used as an artifice or a part of a scheme to defraud and not as a going concern in good faith." The bona fides of the partnership was a matter for the trial court to determine, and apparently in the light of the evidence, it resolved that point adversely to defendant. (*People* v. *Skeen,* 93 Cal.App.2d 489, 491 [209 P.2d 132].)

Closely parallel is the case of *People* v. *Helmlinger, supra,* 69 Cal.App. 139, where defendant was convicted of the crime of obtaining money by false pretenses. The specific charge rested on defendant's fraudulent inducement of the complaining witness to buy a one-half interest in a certain real estate business that defendant represented he was then operating and as to which he falsely stated the earning capacity. In challenge of the propriety of his conviction, defendant contended that "the complaining witness received what he bar-

gained for, that is, an equal partnership interest in the real estate business with the defendant," and that he therefore was not defrauded. In rejecting this argument as "founded upon a false premise," the court succinctly analyzed the basic facts as follows, at pages 142-143: "The complaining witness did not receive that for which he paid his money. He paid out his money for a partnership interest in a business that was represented to him as producing an income of from $800 to $1,000 per month, net, and in connection with which the defendant had made certain sales of real property belonging to one Porter, and had other property listed for sale. He received, according to the undisputed evidence, a partnership interest in a business that produced no net returns, had not made any sales of the Porter property and had practically no property of others listed with it for sale. The complaining witness not only did not receive what he paid his money for, but he received absolutely nothing of value. The fraud practiced upon him by the defendant was complete."

Likewise here, Masi and Patterson, though admitted as members of the partnership in return for their respective investments, did not get that for which they bargained—an interest in a partnership represented as having all its equipment paid for; as then earning from the use of its truck an average of $200 a day; and as needing, because of advance orders, an additional truck so they could make another $200 a day. (*People* v. *Ingles,* 117 Cal.App. 22, 24 [3 P.2d 341] ; see, also, *In re Severin,* 188 Cal. 348, 349 [205 P. 101].)

As the facts concerning the partnership business were so misrepresented to Masi and Patterson, the trial court impliedly found that defendant's dealings were not bona fide, which conclusion finds support in the record and is binding on this appeal. (*People* v. *Raines,* 66 Cal.App.2d 960, 962 [153 P.2d 424].) The fact that Masi was refunded the amount of $1,000 of his original $6,000 investment, and that both Masi and Patterson received back the respective sums of $1,000 and $900 by way of salary and pro rata payments made on dissolution of the partnership, does not avail defendant here. A complete loss of property need not be shown to support a charge of obtaining money under false pretenses. (*People* v. *Bryant,* 119 Cal. 595, 597 [51 P. 960].)

Defendant, having perpetrated a fraud through the device of a partnership, cannot escape criminal liability by reason of that same device upon the theory that the defrauded

parties, by becoming members of the partnership to which they contributed their money pursuant to his representations, retained such an interest in that fund as to preclude defendant's conviction of the crime of grand theft "sounding in false pretenses." (*People* v. *Helmlinger, supra,* 69 Cal.App. 139, 142-143.) The above quoted statement to the contrary in *People* v. *Cravens, supra,* 79 Cal.App.2d 658, 662-663, must be disapproved.

The order denying defendant's motion for a new trial is affirmed, and his purported appeal from the "judgment of sentence and conviction" is dismissed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.