[Crim. No. 2515. Third Dist. Apr. 23, 1954.]

THE PEOPLE, Respondent, v. GEORGE KEMP, Appellant.

Thomas E. Reynolds for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Frederick G. Girard, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Appellant was charged by information with the crime of grand theft, with six prior felony convictions. He refused to apply for appointment of counsel to defend him or to accept counsel appointed by the court, and acted as his own counsel at the trial. He pleaded "not guilty" to offense charged and admitted the prior felony convictions. Following a jury trial he was found guilty, and his motion for a new trial was denied. He then appealed from the judgment of conviction and from the order denying his motion for a new trial, and upon his application the court appointed the public defender of Yolo County to represent him upon the appeal.

Appellant's main contention is that the evidence is insufficient to support his conviction of grand theft. Before discussing this contention we shall summarize the evidence as shown by the record.

A Mr. Randolph, who was the manager of a used car lot in Woodland, California, was at his home in Woodland during the evening of October 3, 1953, when he received a telephone call from appellant who asked him to come down to the car lot, stating that he wanted to purchase one of the used cars. Randolph went to the lot and there met appellant who introduced himself as John M. Doyle and stated that he was in Woodland to assist his niece, a Mrs. Grace Bender, and her son, Stanley, in managing the operation of the Woodland Laundry. He also told Randolph that he had $11,700 in a savings account with the Bank of America, 12th and K branch, in Sacramento, and he showed Randolph a passbook to verify the amount, holding the passbook in such a manner, however, that the name of the depositor was concealed. The parties entered into a transaction whereby Randolph ac-

cepted a check for the purchase price of one of the automobiles and gave appellant possession of the car. Randolph testified to the transaction as follows:

". . . He then told me that this '51 Pontiac was the car he wanted to buy; he wanted to pay cash; he didn't want to finance the car; but he had no commercial account; this was a savings account. I told Mr. Doyle that I would gladly accept his check and refund it to him again on Monday [October 3d was a Saturday] when he released the amount of cash for the check. Which was agreeable with Mr. Doyle. I made out the check, and for the full amount of the purchase price of the automobile; and Mr. Doyle signed it. He showed me Social Security card to tie in with the name of John M. Doyle; and so the transaction was completed."

Appellant, acting as his own counsel, cross-examined Randolph. During this cross-examination he asked Randolph why the latter made out the check if he knew that it wasn't any good, to which Randolph replied:

"I explained to you at the time. I had to have something to bind and protect myself on the sale of the automobile. You represented to me that you had eleven thousand seven hundred dollars in your savings account. You would make the check good on Monday. The check was no more than a piece of evidence for me to prove that you had purchased the automobile and intended to pay for it in full."

Appellant used the name "John M. Doyle" in signing the check, and the name "John M. Doyle" in signing the temporary operator's permit. He did not testify as a witness in his own defense.

Randolph repossessed the car later that evening, after talking with Stanley Bender and learning that the latter did not know "Mr. Doyle." Randolph found the car parked in front of the Woodland Laundry, with the motor running, and he took the car back to his place of business and left it there, taking the keys with him. He saw appellant walking down the street, but apparently made no effort to talk with him before taking the car. Randolph then went to the city police station, told his story, and was returning to his place of business, accompanied by Officer Granucci, when they saw appellant on the street. Appellant ran when they appeared, and Officer Granucci found him hiding under a car, placed him under arrest, and took him to the city jail. A savings passbook, account number 12127, showing a balance of $11,700 in the Bank of America, 12th and K Branch, in Sacramento,

was found in appellant's possession, as were two social security cards bearing the name of John M. Doyle and George Williams, respectively. An assistant cashier of the bank, employed at the 12th and K Branch, testified that the savings passbook had been issued to a John Amo who reported the loss of the book on October 1, 1953. He further testified that on that date the account had a balance of $110, and that the entries in the book had been raised and the street address of the depositor changed. The name "George Williams" had been written over the name of "John Amo" in the book, and the assistant cashier testified that there was no account at the 12th and K Branch of the bank under the name of George Kemp (appellant's name) or George Williams or John M. Doyle.

Appellant was interrogated at the police station by Detective Sergeant Glavin who testified that appellant told him that he found the bank passbook in a bar in Sacramento, that he intended to take the car to Sacramento "and dump it," and that he had no money in the bank at all.

 Appellant argues that to constitute a crime there must be a union of act and intent (citing Pen. Code, § 20), and the fact that he told Randolph that there were no commercial account funds to cover the check shows that there was no deception or intent to defraud, and therefore no crime. He cites *People* v. *Wilkins,* 67 Cal.App. 758 [228 P. 367], *In re Griffin,* 83 Cal.App. 779 [257 P. 458], and *People* v. *Thompson,* 114 Cal.App. 258 [299 P. 821], as authority for this contention. Each of these cases involved a violation of section 476a of the Penal Code relating to the issuing of checks with intent to defraud, the maker of the check knowing at the time that he did not have sufficient funds or credit at the drawee bank to cover the check. In the Wilkins and Griffin cases the payee was advised of the insufficiency of funds when the check was delivered, and the court held that there was no deception and it refused to find fraudulent intent from the mere fact that the drawer of the check failed to provide the funds necessary to cover the check. In the Thompson case there was a conflict in the evidence as to whether the payee was told, when he received the check, that there were insufficient funds in the bank to cover it, and the appellate court upheld the conviction on the ground that it was supported by substantial evidence. However, in the instant case appellant was not charged with or convicted of the offense set out in section 476a of the Penal Code, but was

charged with grand theft as set out in section 484 of the Penal Code. Therefore, the cases cited by appellant are not in point because the conviction of appellant of the offense charged in the information is not based solely upon the issuance of the check.

Section 484 of the Penal Code, so far as applicable here, provides as follows:

"Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property . . . is guilty of theft."

And section 487 of the code provides that:

"Grand theft is theft committed in any of the following cases:

. . . . . . . . . . .

"3. When the property taken is an automobile. . . ."

The crime of grand theft "sounding in false pretenses" is said, in *People* v. *Jones,* 36 Cal.2d 373, 377 [224 P.2d 353], to involve the following considerations: (1) whether there were representations of past events or existing facts as distinguished from a mere expression of opinion or promise of future action, though a promise, if unconditional and made without present intention of performance, will constitute actionable fraud; (2) whether the representations were made with intent to defraud the owner of his property; and (3) whether the owner was actually defrauded in that he parted with his property—both possession and title—in reliance upon the false representations. Applying this test to the facts of the instant case, it appears that each of these elements is present. Appellant did make representations of existing facts which were false. For example, he represented that he was the uncle of a local businesswoman and was in the community for the purpose of assisting her in the management of her business; he represented that he had a savings account balance of $11,700 in a specified bank and he presented an altered savings passbook showing such a balance, as evidence of the account; and he represented that he was the John M. Doyle whose name appeared on a social security card which he presented by way of identification. These misrepresentations will support an inference of intent to defraud, particularly in view of appellant's later admissions that he found the passbook in a bar in Sacramento, that he intended to take the car to Sacramento and dump it, and that he had no money in the bank at all. Randolph testified that he relied

on appellant's representation regarding the savings account and other representations, but even if he had not so testified the jury could have inferred from the circumstances that the representations were the inducing factor. (*People* v. *Hong Quin Moon*, 92 Cal. 41, 42 [27 P. 1096].)

■ There is no merit in appellant's contention that Randolph was not actually defrauded inasmuch as he repossessed the car later the same evening. For as was said in *People* v. *Bryant*, 119 Cal. 595, at page 597 [51 P. 960]:

". . . We cannot concur in this construction of the statute. If a person is induced to part with his property by reason of fraudulent pretenses and misrepresentations, he is thereby defrauded of the property so parted with even though he may eventually make himself whole in some mode not then contemplated. It is not necessary to show that the property has been absolutely lost to him in order to sustain the charge. He is defrauded of his property when he is induced to part with it by reason of the false and fraudulent pretenses and representations, and the offense is complete when by means of such false pretenses the fraud thereby intended is consummated by obtaining possession of the property sought."

And as this court said in *In re Harper*, 17 Cal.App.2d 446, at page 447 [62 P.2d 390]:

". . . it appears that petitioner undertook to purchase a car from the complaining witness, gave him in payment thereof the check in question [allegedly fictitious or forged] and was prevented from actually driving the car away because owing to the lateness of the hour it was impossible to get a license from the proper authorities to operate the car. This shows more than mere preparation to commit the act. *Petitioner had done everything that he was called upon to do, as far as the complaining witness was concerned, to consummate the crime.*" (Italics added.)

See also *People* v. *Talbott*, 65 Cal.App.2d 654 [151 P.2d 317].

■ There is likewise no merit in appellant's contention that the check was in effect a promissory note and therefore that the only proper proceeding was and is a civil suit. As stated in *People* v. *Bryant, supra,* at page 597:

". . . The man who falsely pretends to be the owner of certain specified property, and by reason of such pretense fraudulently obtains the property of another, is guilty of obtaining that property by false pretenses, notwithstanding the

defrauded party may recover the value of the property in a civil action against him.''

Appellant concludes his brief with the following statement: ''We respectfully submit that there being a lack of criminal intent to constitute the crime of Grand Theft, and as this factor prevails in any crime the prosecution could charge, the verdict of the jury should be reversed and the defendant released.''

The question of felonious intent is one to· be determined by the jury from all the circumstances of the case, and unless the determination is without any substantial support in the evidence the finding of the jury is conclusive upon the appellate court. (*People* v. *Raines,* 66 Cal.App.2d 960, 962 [153 P.2d 424].) Further, in resolving the issue as to whether the evidence is sufficient to sustain the conviction, it is the settled rule that an appellate court ''will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by'' the jury to warrant its implied findings, and before they ''can be set aside . . . it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.'' (*People* v. *Jones,* 36 Cal.2d 373, 375 [224 P.2d 353], quoting from *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)

We are satisfied that the verdict of guilty in the instant case is supported by ample evidence.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.