[Crim. No. 5697. Second Dist., Div. Two. Sept. 13, 1957.]

THE PEOPLE, Respondent, v. WILLIAM C. HODGES, Appellant.

Joseph R. Laird, Jr., under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson for Respondent.

ASHBURN, J.—Defendant appeals from judgment of conviction of three charges of grand theft[1] and from order denying motion for new trial. ▮ He also attempts to appeal from the verdict, which plainly is not appealable. (*People* v. *Tompkins*, 109 Cal.App.2d 215, 217 [240 P.2d 356].)

Appellant's principal argument is that the evidence is insufficient to sustain the verdict with respect to each of the first three counts.

Defendant was business manager of Gardena Valley News, a concern engaged in publishing a newspaper in the city of Gardena. He had been contacted by Mr. Medric Spenard, an importer and exporter, who handled Canadian newsprint and offered him 600 tons of the same. His company was desirous of buying 200 tons, but was unable to handle a 600-ton transaction. Defendant took Mr. Spenard to the Times-Mirror Company and there made a deal for it to buy the entire lot and then resell 200 tons to the Gardena concern. The delivered price to Times-Mirror Company was $190 a ton and Spenard had agreed to pay defendant a commission of $5.00 a ton. The Times-Mirrow Company arranged a letter of credit for $114,000 to finance the deal. This was on August 9, 1955. On the 23d of that month defendant told Mr. Lewis W. Daniels, the operator of a restaurant in Gardena, of the deal and said he needed $500 to give to the broker (Spenard) to insure shipment of the paper; he termed it "marginal" money required to get the paper shipped, meaning a part payment on the purchase price; defendant further told Daniels that if the thing did not materialize he would get his money back but if it went through he would receive $1,000 upon an investment of $500; he further said he would turn the money over to the broker, Spenard, so he could send it to Canada. Defendant did not mention a loan or say he wanted the money for himself; he did say he wanted it to turn over to Spenard to be used as partial payment on the newsprint. Relying upon these representations Mr. Daniels turned over to defendant $500 on that same day.

In the latter part of August defendant also told Mr. Dudley Gray, a Gardena attorney, of the newsprint deal; said he would make a profit of $10 a ton but needed $1,000 to $1,500 to pay down on margin and insure delivery of the paper; that he had to give the money to the Los Angeles represen-

[1]Defendant was also charged with petty theft of $200 from one Bruce Jenkins, but he was acquitted on this, the fourth count, of the information, and it is not involved in the instant appeal.

tative of the Canadian seller; that $5.00 a ton was to go to Canada as "margin." He offered to give Gray half his profit for an advance of the necessary money. A week later he showed Gray the letter of credit and said the money for payment of the purchase price was guaranteed. On these representations Gray gave him $500 on September 15 and another $500 on October 3. This he did "for the purposes of paying the Canadian newsprint representative for sending it to Canada;" "[f]or the sole purpose of sending that money to Canada to guarantee shipment of this newsprint down here." There never was any mention of a loan between defendant and Gray.

Delays in delivery of the newsprint brought inquiries from Daniels and Gray as to the reasons. Defendant gave various explanations and finally told Gray he had given his money to Spenard; Gray telephoned Spenard and found that the statement was untrue. In fact, Spenard had never told defendant that money was necessary to guarantee delivery, had not asked defendant for any money or been promised any, and did not receive one dollar from him. On one occasion in answer to Daniels' inquiry defendant said that the deal was closed, the paper was in Los Angeles and he was going to Newport over the weekend to pick up the check and get the signature. Defendant himself testified, "I always needed money." Asked whether he intended to use Daniels' money for personal expenses he said: "Whatever came up first and needed it the worst." With reference to the Gray money: "What did you intend to do with the money which you got from Mr. Gray? A Use it the same way; whatever needed first." He also admitted that he never gave any of the money received from Daniels or Gray to Spenard. When questioned by Deputy Sheriff Knowles defendant said that he had turned Gray's $500 over to Spenard, followed immediately by the statement that he could not recall, "that there might have been part of it." With respect to the Daniels money he told Knowles "that he had spent it in various ways . . . that he had spent it on his own personal expenses and debts."

The paper deal was never consummated. In early December Spenard received a telegram from the seller saying that the price had gone up $5.00 a ton. He then asked defendant whether he would split the increase with him. Defendant declined and apparently this impasse caused the

failure of the deal. Defendant received no money from it and the demands made upon him by Daniels and Gray for the return of their money proved fruitless.

Other portions of the State's evidence had a tendency to offset some of the foregoing but it is not necessary to discuss it. Defendant himself was the only witness for the defense. His version of the transaction with Daniels and Gray varied substantially from their testimony, but he was impeached by proof of conviction of three prior felonies, viz., larceny as bailee in Colorado in 1931, issuing checks without sufficient funds in California in 1943, and grand theft in California in 1950. The jury and trial judge rejected his story and adopted that of the complaining witnesses.

■ The foregoing résumé of the facts is built upon testimony and inferences favorable to respondent pursuant to the established rule of review, which requires us to assume in favor of the verdict every fact which the jury could reasonably have deduced from the evidence, and to refrain from drawing contrary inferences of our own. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) Those facts are sufficient to support a finding of grand theft (Pen. Code, §§ 484, 487, subd. 1), upon the theory of false pretenses or that of trick and device. ■ "Larceny by trick and device is the appropriation of property, the possession of which was fraudulently acquired; obtaining property by false pretenses is the fraudulent or deceitful acquisition of both title and possession." (*People* v. *Ashley,* 42 Cal,2d 246, 258 [267 P.2d 271].)

■ The language of *People* v. *Gilliam,* 141 Cal.App.2d 749, 754 [297 P.2d 468], is pertinent: "It is settled however, that a promise made with an existing intent not to perform may constitute a false pretense within the grand theft statute. (*People* v. *Ashley,* 42 Cal.2d 246, 262-265 [267 P.2d 271]; *People* v. *Weitz,* 42 Cal.2d 338, 343 [267 P.2d 295].) The jurors in this case were justified in inferring that defendant at the time of making them intended not to perform his promises."

■ Likewise that of *People* v. *Bartges,* 126 Cal.App.2d 763, 770 [273 P.2d 49]: "Without again setting forth the evidence in detail, suffice it to say that it clearly shows that appellant, with a preconceived design to appropriate the money to his own use, obtained possession of it by means of fraud and trickery. The fraud vitiated the transaction and the owner is deemed still to retain a constructive possession

of the property. The owner does not part with title to the alleged thief where, as here, he delivered it to appellant to be applied by the latter to a particular purpose and the recipient, having obtained possession with the preconceived intention to appropriate the money to his own use, subsequently did convert it to his own use instead of applying it to the purpose contemplated by the owner. Under the facts here present there was in contemplation of the law of larceny a 'taking.' . . . ■ Since the money belonged to Mr. Simmons and appellant acquired possession of it by fraud and chicanery, his holding was without right, and title thereto did not pass to him." (See also *People* v. *Hennessey,* 201 Cal. 568, 581-582 [258 P. 49]; *People* v. *Kirsch,* 204 Cal. 599, 602 [269 P. 447]; *People* v. *Gilliam, supra,* at 758.)

The evidence would also warrant a conviction upon the theory of embezzlement, the essence of which is stated in Penal Code, section 503: "Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted." ■ The gist of the offense is the appropriation to one's own use of property delivered to him for devotion to a specified purpose other than his own enjoyment of it. (See *People* v. *Fewkes,* 214 Cal. 142, 147-148 [4 P.2d 538]; *People* v. *Jones,* 61 Cal.App.2d 608, 621 [143 P.2d 726]; *People* v. *Pierce,* 110 Cal.App.2d 598, 605 [243 P.2d 585].) ■ Neither Mr. Daniels nor Mr. Gray made a loan to defendant or delivered money to him for his own use. Each delivered it for the specific purpose of its being forwarded to Canada as part of a down payment on the newsprint. When defendant diverted it to his own pocket that constituted embezzlement.

Appellant complains of the giving of Instruction Number 224 of California Jury Instructions Criminal (CALJIC) at the instance of the prosecution; it is set forth in the margin.[2] The claim is that the instruction was inappropriate, but it appears from the foregoing discussion that that contention cannot be sustained.

[2]CALJIC No. 224: "A form of theft known as embezzlement consists of the fraudulent appropriation of money or other property by a person to whom it has been entrusted. In accord with that definition, the law prescribes that every trustee, broker, agent, [ .. .. .. ] or other person entrusted with or having in his control property of another, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of theft by embezzlement."

■ It is also argued that the giving of CALJIC Number 231[3] at the People's request was erroneous and prejudicial. Again, the argument must be rejected. This instruction explains the three forms of theft,—embezzlement, obtaining property by false pretense, and larceny by trick and device. It concludes with this paragraph: ''[However, it is necessary that you all agree as to which of the three types of theft was committed. If you should not be able to do that, the unanimity of decision necessary to warrant a verdict of 'guilty' would be lacking, and it would be improper for you to deliver such a verdict.]'' Appellant complains that it was error, a denial of his constitutional rights, to omit the bracketed language. The note to instruction 231, found at page 78 of the 1953 pocket part of CALJIC, says: ''It now is definitely established that the final and bracketed paragraph of this instruction, p. 183, Main Volume, is not a correct statement of law and ought not to be given.'' To this effect are *People* v. *Nor Woods*, 37 Cal.2d 584, 586 [233 P.2d 897]; *People* v. *Ashley, supra,* 42 Cal.2d 246, 258; *People* v. *Jones, supra,* 61 Cal.App.2d 608, 622; *People* v. *Caldwell,* 55 Cal.App.2d 238, 255 [130 P.2d 495]; *People* v. *Lamb,* 133 Cal.App.2d 179, 186 [283 P.2d 727].

---

[3]CALJIC No. 231: ''Sometimes it is difficult to determine which, if any, of three forms of theft the facts of a case show was committed, because while the distinction between them is real, the evidence may be susceptible of different reasonable interpretations. Those three forms of theft are: 1. Embezzlement; 2. Obtaining property [or labor] by false pretense; and 3. Larceny by trick and device.

''When one receives the possession of property lawfully by virtue of the fact that it is entrusted to him, and thereafter he violates his trust and fraudulently converts the property to his own use or to a use not authorized by the owner, his theft is called embezzlement.

''When one knowingly and with design uses some fraudulent representation or pretense as a means of obtaining property [or labor] from another, who, in parting with it, intends to transfer title as well as possession to the person who so obtains possession, the theft is called obtaining property by false pretense.

''When one obtains possession of the property of another by some trick or device, intending to convert it to his own use, and to permanently deprive the owner of it, and the owner, although parting with possession to such person, does not intend to transfer his title to that person, the theft is called larceny by trick and device.

''If you should find that the defendant committed any of the three kinds of theft just mentioned, you should return a verdict of guilty, and it will not be necessary or proper for you to state in your verdict which of the three forms of theft was committed.

''[However, it is necessary that you all agree as to which of the three types of theft was committed. If you should not be able to do that, the unanimity of decision necessary to warrant a verdict of 'guilty' would be lacking, and it would be improper for you to deliver such a verdict.]''

Lastly it is contended that there was error in excluding certain evidence going to the merits of the Jenkins transaction which was the subject of the fourth count of the information, the count upon which defendant was acquitted. This evidence had no bearing upon the first three counts, those upon which defendant was convicted. Obviously the point is frivolous.

The judgment and order denying new trial are affirmed. The appeal from the verdict is dismissed.

Moore, P. J., and Fox, J., concurred.