[Crim. No. 6356. Second Dist., Div. Three. Nov. 3, 1959.]

THE PEOPLE, Respondent, v. DONALD ELBERT BATEMAN, Appellant.

Donald Elbert Bateman, in pro. per., and Gentile & Laughlin for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin Part, Deputy Attorney General, for Respondent.

VALLÉE, J.—By information defendant was charged in two counts with grand theft. Count I charged that on December 24, 1956, he unlawfully took more than $200 from Ray Wilcox, Jr. Count II charged that on April 26, 1957, he unlawfully took a white Thunderbird automobile from Wilcox. Count I was dismissed. The court, sitting without a jury, found defendant guilty of the offense charged in Count II. Defendant was also charged with a prior conviction of grand theft committed in 1949 which was found to be true. He appeals from the judgment and the order denying a new trial.

Ray C. Wilcox, Jr., first met defendant in early December 1956. Defendant, an automobile broker, went to Wilcox' office for the purpose of selling him an automobile. Wilcox told defendant he wanted a 1957 Ford Thunderbird, blue in color; that he was going to give it to his father for Christmas. The purchase price was $3,950. Wilcox gave defendant a check for $1,050 as a down payment and defendant agreed to deliver the car to Wilcox before Christmas, 1956.

On December 24, 1956, defendant delivered a white Thunderbird to Wilcox and agreed to take it back some time after Christmas and deliver a blue Thunderbird in its place. At that time Wilcox gave defendant a check for $2,900, the balance of the purchase price, and defendant gave Wilcox a pink slip for the white car. Wilcox did not take any steps toward registering the white car in his name because he felt he would be turning it back in a few days.

From Christmas 1956 until April 1957 Wilcox called defendant frequently and asked him when the blue car would arrive. Each time, defendant promised it would not be long.

On April 26, 1957, defendant took the white car back and gave Wilcox a check for $3,500. The check was signed by defendant and represented the price at which Wilcox sold the white car to defendant. The difference between $3,950, the price paid by Wilcox, and $3,500, the price paid by defendant, was because of depreciation and difference in accessory value. Defendant wrote the following on the reverse side of the $3,500 check at the time he gave it to Wilcox: "Presentation of this check, plus $200.00 and 1957 fee on 1957 T-bird, payment in full on new T-bird as ordered. D. B."

At the time defendant took the white car back it was understood between Wilcox and defendant that Wilcox would hold the check for "several days"; defendant would arrange to obtain a blue Thunderbird for Wilcox; and Wilcox would return the $3,500 check plus $200 for it. Defendant said "in several days he would have the blue one," . . . "I will put you in direct contact with the dealer who will sell you a car for $3700," and that if he did not get the car the check would be payment for the white one.

After April 26, Wilcox contacted defendant "many times" about getting the blue Thunderbird. Each time defendant said he was working on it; that he would have it "tomorrow." Not having received the blue car, Wilcox deposited the check in his account on May 17, 1957. On April 26 defendant had $1,276.45 on deposit in the bank on which the check was drawn. On May 17 he had $177.86. After April 29, 1957, the highest balance defendant had on deposit was $604.01. Defendant had no arrangement for credit with the bank on which the check was drawn. The $3,500 check was returned because of insufficient funds. Wilcox never received any part of the $3,500.

Defendant sold the white Thunderbird on April 26, 1957, the day he received it from Wilcox, for $3,550.

In a conversation with defendant after his arrest, a police officer asked him what he did with the money he received for the white car. Defendant stated he had some financial reverses at that time and that he had to spend that money to take care of those reverses, and that he was sick and took some of the money for a hospital bill. The officer asked him what his understanding was as to what he was to do with the money at the time he sold the white car. Defendant stated he was to take the money and buy a blue Thunderbird.

Defendant testified he told Wilcox on April 26, 1957, he did not have $3,500 in the bank, and that he would dispose of the white car; "the proceeds of the money was to be used for the possible purchase of the second blue Thunderbird"; "It was stipulated on the back of the check that the check was to be returned to me, along with two hundred dollars and the license fee, and I would, in turn, use that as the money for the new Thunderbird"; on April 26 he wanted the white car in order to sell it; he made unsuccessful efforts to find a blue Thunderbird; after he sold the white car he became ill; he received $3,550 for the white car and bought three cashier's checks; he used them in the course of his business for the purchase of automobiles; he did not use any of the money for personal purposes; he did not deposit any of the three cashier's checks in any bank; he never had $3,500 in his bank account after April 26, 1957; after April 26 he did not get Wilcox a blue Thunderbird for the reason that he had taken some losses on two cars in an accident and he had been given a bad check himself.

Defendant's only point is that the evidence is insufficient to sustain the finding of guilt. It is argued the transaction amounted to a sale of the white car for a promissory note for $3,500 and defendant's promise to accept the note and other consideration for a blue Thunderbird when one could be obtained. Defendant says: "The real question hinges on whether or not the defendant intended, at the time of the aforesaid transaction, to make the check good which he had given to Wilcox. If he did not intend to make the check good, then it is reasonable to suppose that he never intended to try and obtain a blue Thunderbird for Wilcox either." The People say the evidence supports the implied finding that defendant obtained the white car by false pretenses.

Grand theft includes obtaining an automobile by false pretenses. (Pen. Code, §§ 484, 487.) ▇▇ Obtaining property by false pretenses is the fraudulent or deceitful acquisition

of title and possession. (*People* v. *Ashley,* 42 Cal.2d 246, 258 [267 P.2d 271].) ■ The elements of grand theft on the theory of obtaining property by false pretenses are: 1. an intent to defraud; 2. an actual fraud committed; 3. the use of false pretenses to perpetrate the fraud; and 4. reliance on the fraudulent representations in parting with the property. (*People* v. *Baird,* 135 Cal.App.2d 109, 114 [286 P.2d 832].) ■ A promise made with an existing intent not to perform may constitute a false pretense within the grand theft statute. (*People* v. *Hodges,* 153 Cal.App.2d 788, 792 [315 P.2d 38]; *People* v. *Ames,* 61 Cal.App.2d 522, 531 [143 P.2d 92].) ■ ''The theory has been advanced in two recent decisions that, as in civil actions for fraud, the making of a promise with no intention of performing it or no bona fide belief in its possibility of performance is a false representation of a present fact, i.e., of the state of the promisor's mind.'' (*People* v. *Chamberlain,* 96 Cal.App.2d 178, 182 [214 P.2d 600].)

The intent to commit an offense is manifested by the circumstances connected with the offense. (Pen. Code, § 21.) It is presumed that an unlawful act was done with an unlawful intent. (Code Civ. Proc., § 1963, subd. 2.) ■ To render a person guilty of a public offense it is not essential to a conviction that the proof should show such person to have entertained any intent to violate the law; it is sufficient that he intentionally committed the forbidden act. (*People* v. *Dillon,* 199 Cal. 1, 7 [248 P. 230]; *People* v. *McLaughlin,* 111 Cal. App.2d 781, 791 [245 P.2d 1076].) ■ The intent with which an act is done may be gathered from all the circumstances shown in evidence, and is a question of fact. (*People* v. *Baird,* 135 Cal.App.2d 109, 114 [286 P.2d 832]; *People* v. *Kemp,* 124 Cal.App.2d 683, 689 [269 P.2d 186]; *People* v. *Turley,* 119 Cal.App.2d 632, 635 [259 P.2d 724].)

■ ''Whether a deal is a bona fide civil transaction or whether defendant intentionally obtained money from the complaining witness by making false representations is a question of fact for the determination of the trier of facts, whose determination based upon substantial evidence is binding upon an appellate court. (*People* v. *Jones,* 61 Cal.App.2d 608, 619 [143 P.2d 726]; *People* v. *Rose,* 9 Cal.App.2d 174, 175 [48 P.2d 1009].) . . . ■ The fact that the property purchased was worth the consideration paid therefor does not constitute a defense to the charge of grand theft if the jury believed, supported by substantial evidence, that defendant with intent to defraud, knowingly made false repre-

sentations that certain facts existed for the purpose and with the effect of inducing the prosecuting witness to part with something of value. (*People* v. *Bryant,* 119 Cal. 595, 597 [51 P. 960] ; *People* v. *Foster,* 117 Cal.App. 252, 253 [3 P.2d 586].)'' (*People* v. *Raines,* 66 Cal.App.2d 960, 962 [153 P.2d 424].)

In *People* v. *Kemp, supra,* 124 Cal.App.2d 683, it is said (p. 688) : ''And as this court said in *In re Harper,* 17 Cal. App.2d 446, at page 447 [62 P.2d 390] :

'' '. . . it appears that petitioner undertook to purchase a car from the complaining witness, gave him in payment thereof the check in question [allegedly fictitious or forged] and was prevented from actually driving the car away because owing to the lateness of the hour it was impossible to get a license from the proper authorities to operate the car. This shows more than mere preparation to commit the act. *Petitioner had done everything that he was called upon to do, as far as the complaining witness was concerned, to consummate the crime.'* (Italics added.)

''See also *People* v. *Talbott,* 65 Cal.App.2d 654 [151 P.2d 317].

''There is likewise no merit in appellant's contention that the check was in effect a promissory note and therefore that the only proper proceeding was and is a civil suit. As stated in *People* v. *Bryant, supra,* [119 Cal. 595 (51 P. 960)] at page 597:

'' '. . . The man who falsely pretends to be the owner of certain specified property, and by reason of such pretense fraudulently obtains the property of another, is guilty of obtaining that property by false pretenses, notwithstanding the defrauded party may recover the value of the property in a civil action against him.' ''

 Defendant represented to Wilcox that he would obtain a blue Thunderbird for him in a few days. He took the white car and gave Wilcox a worthless check. It was understood that when defendant delivered the blue car Wilcox would return the check and give defendant an additional $200. Defendant told Wilcox that he would put him in direct contact with the dealer who would sell him a blue car for $3,700. Wilcox testified he was to hold the check several days and if defendant did not deliver a blue car within that time he (Wilcox) was to cash the check. He also testified it was understood that if defendant did not get the blue car within

"several days" the check would be payment for the white one. Defendant sold the white car the day he received it from Wilcox. He admitted he was to use the proceeds of the sale to buy a blue car. Instead, he bought three cashier's checks and used them for his own purposes. He did not use the proceeds from the sale of the white car to buy a blue one. Wilcox waited until May 17 and deposited the check. It did not clear. Defendant did not at any time have sufficient funds on deposit to cover the check. He did not make the check good. He never did obtain a blue car for Wilcox.

The trial judge may reasonably have concluded that defendant obtained the white car and and knowingly gave the worthless check for the purpose of selling the car immediately and using the proceeds not to buy a blue car but for his own ends; that defendant had no intention of doing that which he represented to Wilcox he would do; and that he acquired possession of the white car by means of the check which he knew was, and would be, worthless. We cannot say as a matter of law that a reasonable inference may not be drawn from the evidence that from the inception of the transaction defendant never intended to deliver a blue Thunderbird to Wilcox.

The cause is argued here as though we were the triers of fact. The matters argued were for the consideration of the trial judge. The test on review is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt has been established beyond a reasonable doubt. (*People* v. *Goodman,* 159 Cal.App.2d 54, 59 [323 P.2d 536].)

 It was the function of the trial judge in this nonjury case to determine what facts were established by the evidence. Before his conclusion can be set aside on review on the ground of insufficiency of the evidence, it must be made clearly to appear that on no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. We must assume in favor of the finding of guilt the existence of every fact which the trial judge could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the finding. If the circumstances reasonably justify the finding of the trial judge, our opinion that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the trial judge. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104

P.2d 778].) ▉ We think it manifest that there is sufficient evidence to support the conclusion of the trial judge.

▉ Prior to the trial Count I was dismissed on motion of defendant under section 995 of the Penal Code. At the conclusion of the trial the court found defendant guilty "as charged." In recording the judgment the clerk erroneously wrote: "Whereas the said defendant having *been* duly *found* guilty in this court of the crime of GRAND THEFT (Sec. 487.1 PC), a felony, as charged in each of the Counts 1 and 2 of the information; prior conviction having been stricken It is Therefore Ordered, Adjudged and Decreed that the said defendant be punished by imprisonment in the State Prison for the term prescribed by law, on said Counts."[1] Defendant was not found guilty of "GRAND THEFT (Sec. 487.1 PC)." He was charged with and convicted of grand theft as provided in section 487, subdivision 3, of the Penal Code. He should not have been found guilty as charged in Count I of the information, since that count had been dismissed. He should have been found guilty as charged in Count II only. The judgment should not have been on both counts.

The judgment as to Count I is reversed. The judgment and the order denying a new trial as to Count II are affirmed. The cause is remanded to the superior court with directions to correct its minutes and judgment to speak the truth.

Shinn, P. J., concurred.

---

[1]Sentence was suspended and defendant was placed on probation.