[Crim. No. 7469.   Second Dist., Div. One.   Nov. 2, 1961.]

THE PEOPLE, Respondent, v. CLARENCE CHARLES RATH, Appellant.

Harrison M. Dunham, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Felice R. Cutler, Deputy Attorney General, for Respondent.

LILLIE, J.—A jury convicted Rath of the crime of grand theft (Pen. Code, § 487, subd. 1) ; three prior felony convictions had previously been admitted. He appeals from the judgment; the sole contention is that the evidence is insufficient as a matter of law to sustain the jury's verdict.

The record reveals evidence of the following facts: In the year 1959 defendant was the president of Diversified Machinery Company, a Los Angeles concern in the business of buying and selling machinery; the company had been organized and financed by one Heller. Oliver Klatt was the owner of K & W Engineering Company, the victim of the theft. He was acquainted with the defendant, the parties having had business dealings which involved the purchase of machinery.

On October 29, 1959, Klatt purchased three items of machinery from Diversified for the sum of $1,560. This purchase was made through defendant in the following manner: Klatt gave defendant a K & W check in the amount of $900 to the order of Diversified; when he told defendant that he would

mail Diversified the remaining $660, defendant requested Klatt to make out the check to defendant's order. Upon his receipt of the $900 check, defendant prepared and gave to Klatt an invoice from Diversified setting forth the items of machinery sold and the total price thereof, namely, $1,560. This invoice bore the notation "Paid in full, 10/19/59." Subsequently Klatt mailed defendant a K & W check for $660. Both checks were cashed by the defendant and the proceeds thereof by him appropriated.

The following Wednesday Klatt called Diversified to arrange for the delivery of the machinery. He was told by Heller that defendant had disappeared; delivery of the machinery was refused. Heller testified that the records of Diversified did not indicate a sale to Klatt of the items in question; and he further stated that his company never received the two checks given to defendant by Klatt.

The defendant was arrested in February of 1960. In a conversation with police he stated that he had endorsed the $900 check by writing "Diversified Machinery Co." on the back of the instrument and cashed it at a liquor store; he also said that the $660 check was made out to him rather than Diversified because ". . . things were catching up . . . I needed pin money for gas, as I was leaving." Defendant left Los Angeles, and went to Las Vegas, Arizona, Texas, New Orleans and Tennessee.

Defendant took the stand; his testimony developed the following story. He was contacted in May of 1958 by Heller with a view to organizing Diversified; Heller was to furnish the capital and defendant was to manage the company. Diversified was thereafter organized, defendant being given 47 per cent interest in return for his efforts. An office was rented the next month and defendant began hiring employees. Disagreements or misunderstandings as to management and other matters followed. Heller set the limits on salaries; although defendant discussed the subject of raises with Heller, defendant "never got anywhere." Sums of money in excess of salaries fixed by Heller were paid by defendant to the company's employees. Defendant secured this money by signing and cashing checks made out to Diversified; the K & W check for $900 was one such check. Finally, in October of 1959 (shortly before the theft for which defendant was prosecuted) Heller decided to disband Diversified; he told defendant to liquidate all machinery; defendant took the $660 check, which represented "the profit" on the machinery pur-

chased by Klatt, because he knew he would not "get a fair shake" from Heller.

In support of his sole assignment of error—the insufficiency of the evidence to sustain the judgment—appellant argues that the corpus delicti of grand theft was not established. The claim is without merit. ■ Theft, as defined by section 484 of the Penal Code, may be committed by trick and device, false pretenses or embezzlement. (*People* v. *Jones,* 36 Cal.2d 373, 377 [224 P.2d 353].) ■ "Juries need no longer be concerned with the technical differences between the several types of theft, and can return a general verdict of guilty if they find that an 'unlawful taking' has been proved." (*People* v. *Ashley,* 42 Cal.2d 246, 258 [267 P.2d 271].) ■ Where, as here, the only basis of appeal is the insufficiency of the evidence, the judgment must be affirmed if there is sufficient evidence to support the conviction of theft by trick and device, or false pretenses, or by embezzlement. (*People* v. *Reinschreiber,* 141 Cal.App.2d 688, 696 [297 P.2d 658].)

■ ■ "Larceny by trick and device is the appropriation of property, the possession of which was fraudulently acquired; obtaining property by false pretenses is the fraudulent or deceitful acquisition of both title and possession" (*People* v. *Ashley, supra,* 258) ; embezzlement is defined as the fraudulent appropriation of property by a person to whom it has been entrusted (Pen. Code, § 503), the gist of the offense being the appropriation to the accused's own use of property delivered to him for devotion to a specific purpose other than his own enjoyment of it. (*People* v. *Hodges,* 153 Cal.App.2d 788, 793 [315 P.2d 38].)

■ We agree with respondent's contention that a case of theft by trick and device was here made out. ■ To constitute theft in that manner, the following elements must be present: (1) There must be a taking; (2) there must be an asportation of the thing taken; (3) the thing taken must be the property of another; and (4) the taking and carrying away must be with an intent, without claim or pretense of right or justification, to deprive the owner of his property wholly and permanently. (*People* v. *Bartges,* 126 Cal.App.2d 763, 770 [273 P.2d 49].)

■ Without again setting forth the evidence, it is apparent from the record that appellant, with a preconceived design to appropriate the proceeds of the checks in question to his own use, obtained possession thereof by means of fraud

and trickery. The fraud having vitiated the transaction, the owner is still deemed to constructively retain possession of the property. An owner does not part with title to the alleged thief where, as in the instant case, he delivered it to the appellant to be applied by him to a particular purpose, namely, the purchase from Diversified of certain items of machinery; further, the appellant-recipient, having obtained possession with the preconceived intention of appropriating the money to his own use, did so convert it instead of applying it to the purpose intended by the owner. Hence there was in contemplation of law a "taking."

The element of "asportation" is shown by evidence that when appellant obtained the checks from Klatt, he did not intend to devote their obtainable proceeds to the use for which they were given to him but to convert such proceeds to his own particular use. Appellant admittedly appropriated the money realized from the $900 check to augment the salaries of Diversified's employees; the check for $660 was cashed because, as appellant testified, he was in need of "pin money."

As for the third element (the thing taken must be the property of another), since the money belonged to K & W and appellant acquired it by fraud, his holding was without right, and title thereto did not pass to him. (*People* v. *Bartges, supra,* 126 Cal.App.2d 763.)

The fourth and last essential of larceny, felonious intent without claim or pretense of right or justification to deprive the owner of his property, was also established. Four days before the transactions with Klatt, appellant learned that Diversified was to be disbanded. He was asked by Heller to liquidate the machinery; appellant ostensibly did so, but to his own personal gain, by the transactions with Klatt. The jury was fully warranted in concluding that appellant, upon receipt of the checks, cashed them with the previously conceived intent to deprive K & W wholly and permanently of the money realized therefrom. ■■■ "Intent is a question of fact which may be proved like any other fact, by acts, conduct and circumstances connected with the offense." (*People* v. *Fewkes*, 214 Cal. 142, 148 [4 P.2d 538].) See also *People* v. *Wade*, 71 Cal.App.2d 646, 652 [163 P.2d 59], and authorities there cited.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.