[Crim. No. 8344.   Second Dist., Div. Two.   Apr. 15, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. EDWARD M. SHARLOW, Defendant and Appellant.

Philip C. Griffin, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant, in a trial by jury, was convicted of four counts of violating Penal Code, sections 484 and 487, subdivision 1: Grand Theft. He appeals from the judgment.

On numerous occasions beginning in 1959 and ending in 1961, appellant placed advertisements in local newspapers as follows: "Shrimp hauls, L.A.-N.Y., two weeks on, two weeks off, $800.00 a month net, $3,500 required. . . ."

On four occasions which constitute the basis for the criminal action at bench, the four separate victims answered said advertisement. When appellant met each victim, he represented to each severally that in exchange for $3,500 he would transfer to each a one-half interest in a truck owned by appellant and thereafter the truck thus jointly owned by appellant and the victim would be used exclusively by the victim to make hauls of shrimp in a two-week round-trip schedule to the East coast and that each haul would net a profit of $800.

Appellant also represented to each victim that each would have return loads from the East, that they would work on a two week on and two week off basis and that the hauls would involve frozen foods exclusively.

The testimony showed that each of the victims did in reliance upon said representations enter into written contracts with appellant and paid to him the money required to purchase a one-half interest in a truck for the purpose of hauling shrimp. All of the representations were false and none of the representations were fulfilled. The record shows that appellant did not own any interest in any truck in respect of which he purported to convey a one-half interest to each victim here involved.

The written agreement which each victim was required to sign provided for the return of the $3,500 on two weeks' notice. As each victim in turn discovered that he was chasing an illusion and actually had no one-half ownership interest in the truck which had been allegedly transferred, each victim in turn gave notice as required by the written contract and requested a return of the money invested. No part of such investment was returned.

Appellant maintained that he never represented that he had actual contracts with third persons to haul shrimp but only "arrangements"; that the contracts he signed with each victim transferring ownership in the trucks were only temporary agreements which would later be made final on the happening of certain events; and that the $800 per month net profit to be made by each driver was only an estimated figure. In essence, appellant's defense at the trial was, and it is the same before this court, that he had not made any representations with intent to defraud but that in each case a legitimate business venture had been entered into but had not fruitified.

Appellant's primary contention is that the evidence is insufficient to support the verdict. In our opinion the lengthy record before us, totaling some 800 pages, abundantly establishes the contrary.

As the court said in *People* v. *Hambleton,* 218 Cal.App.2d 479, at page 481 [32 Cal.Rptr. 471] : ''It is apparent that the defendant would have this court reweigh conflicting evidence, which is for the trier of facts, and not within the province of a reviewing court which determines only whether there were sufficient facts proved to warrant the inference of guilt. (*People* v. *Kemp,* 124 Cal.App.2d 683 [269 P.2d 186]).''

Appellant asserts that he had no intent to defraud and that an intent to defraud was not established.

In *Hambleton, supra,* the court at page 481 also says : ''To establish the commission of the crime of grand theft sounding in false pretenses, it must be proved that: the defendant made false representations of past events or existing facts, as distinguished from a mere expression of opinion or promise of future action; the representations were made with intent to defraud the owner of his property; and that the owner was actually defrauded in that he parted with his property in reliance upon the false representations. [Citations.] . . .''

■ The record abounds with direct testimony of the victims and circumstantial evidence from which the false representations made by appellant as to the terms of the driving contracts and his ownership of the trucks. In addition, his alleged transfer of an interest in trucks which he did not own, to each victim, coupled with appellant's subsequent refusal to return the $3,500 as provided in each contract, were in themselves sufficient to support a finding of intent to defraud without reference to the representation to each victim that each would earn a profit of $800 per month which appellant asserts was an expression of opinion. (*People* v. *Hambleton, supra*; *People* v. *Davis,* 112 Cal.App.2d 286 [246 P.2d 160].)

Appellant also contends that the court erred on restricting his attempts to develop certain evidentiary matters considered by him to be crucial to his defenses.

■ Appellant attempted to introduce testimony of a Mr. Graves to the effect that Graves and appellant had entered into an agreement in January 1961, similar to those in the case at bench and that this agreement between Graves and appellant was satisfactory to both parties. Appellant argues that such evidence would show that his deals with the victims here involved were not reckless and would evidence the fact that net profit could be earned from each trip. This type of evidence is neither relevant nor probative to establish good faith or lack of criminal intent in respect of the four fraudulent acts here involved especially in the absence of a foundation showing

the circumstances to be identical to the situation of the four here victimized. No such foundation was laid or offered.

■ Appellant also contends that the court erred in refusing to allow his wife to corroborate appellant's testimony that subsequent to the four frauds he lost most of what he owned as a result of his part in the trucking business. As with the prior contention, however, this evidence was irrelevant to the issue of intent to defraud in respect of the transaction for which appellant was tried. On the record before us, its logical relevance could be that appellant carelessly managed his fraudulent activities. In *People* v. *Jones*, 42 Cal.2d 219, the court says at page 222 [266 P.2d 38]: " 'All facts having rational probative value are admissible, unless some specific rule forbids.' (1 Wigmore on Evidence [3d ed. 1940], § 10, p. 293; and cf. Code Civ. Proc., § 1868.) ■ The general test of relevancy of indirect evidence is whether it tends logically, naturally, and by reasonable inference to prove or disprove a material issue. (Code Civ. Proc., § 1832; *People* v. *Eldridge*, 147 Cal. 782, 784 [82 P. 442]; *People* v. *Donnolly*, 143 Cal. 394, 398 [77 P. 177]; cf. *People* v. *Peete*, 28 Cal.2d 306, 315 [169 P.2d 924].) "

The only remaining question is whether the rule of *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], has any application to this case. The question is not raised in the briefs, but since it is pregnant in the record of the case and may be raised in future proceedings, we address ourselves to it.

■ Officer Connor testified to an interview with appellant after arrest en route to the police station and in a subsequent interview at the station. The record is silent as to whether appellant at either time was advised of his right to counsel or to remain silent or that he effectively waived either. The testimony of Officer Daniels on this subject in full is as follows:

"Q. Did you have a conversation with Mr. Sharlow pertaining to the charges in this case? A. I did. Q. When and where did·that conversation take place? A. I believe it was May 16, 1961 enroute from the Sheriff's office and into the Police Building at Los Angeles, at Second and Los Angeles Streets, and in Room 300 of the Los Angeles Police Administration Building. Q. Who else was present besides yourself and Mr. Sharlow? A. Just Mr. Sharlow and myself in the building that I recall. My partner was present in the automobile coming in from Santa Ana to Los Angeles. Q. Were defendant's statements made freely and voluntarily? A. They were. Q. Will

you relate the conversation? A. I asked the defendant if he placed ads in newspapers advertising or soliciting partners to go in the trucking business with him. He said that he had. I asked him if the previous witnesses that had testified in the case, with the exception of Lucas and Mr. Lindstrom had given him $3500.00 to go into partnership with him for a one-half ownership of a truck, and he stated that they had. I asked him if he told them that he had contracts with third parties to haul frozen shrimp to the Eastern Seaboard—Mr. Findley [Defense Counsel] : Your Honor, that isn't what the preliminary shows. Mr. Daniels: I object. The Court: That you can bring out on cross examination if the officer has testified to something different. This is not his testimony from the preliminary hearing, but you can do that for the purpose of impeachment, but an objection doesn't lie, as I see it, Counsel. Mr. Findley: Thank you. Q. By Mr. Daniels: Continue. A. By the Witness: I asked him if he had told them that he had contracts with third parties to haul frozen shrimp to the Eastern Seaboard and to bring a load back with frozen scallops and other commodities, to return to Los Angeles. He said, 'I didn't tell them I had contracts. I told them I had agreements with third parties to do this.' I asked him if he actually had any contracts or any type of a binding agreement with third parties to haul frozen shrimp to New York or the Eastern Seaboard and return with loads from those states and he stated that he had nothing binding nor no contracts but he had various brokers in the Los Angeles area and that he could get all the loads that he needed from these particular brokers. I asked him if he had represented to these people that they could net $800.00 a month working on a two-week basis by hauling these particular foods back to the Eastern Seaboard and return, and he stated that he told them that they could if they hadn't been green drivers and inexperienced and broke up all the equipment. I asked him why he continued to advertise and collect $3500.00 from other green drivers after the first one or two proved unsuccessful and he stated that it was difficult to get experienced men on these because most of them had their own rigs. I asked him how he could sell these particular vehicles to these particular individuals or half interest in them when he was not the registered owner or the legal owner. He stated that he intended to register them in their names at some later time. I think that was about the end of the conversation. Q. Did you ask him whether or not he had any long-term leases with any particular brokers?

A. Yes. Q. What did he say? Mr. Findley: We covered that, I believe, and the question has been asked and answered. The Court: Overruled. You may answer. Q. By Mr. Daniels: What was his answer? The Witness: The question again, please? The Court: Did you ask him if had any long-term leases? The Witness: Yes. He said no, that he didn't. Q. By Mr. Daniels: Did he know whether or not they were on a one-trip basis with the broker? A. He did. Q. What did he say? A. He said they were only on a one-trip basis but that he could get all that he wanted. Mr. Daniels: Nothing further."

The only facts which appellant admitted to the officer were those as to which documentary proof was available and which were never in issue. He subsequently testified to substantially the same effect as a witness in his own behalf. He in no way admitted any degree of guilt but denied making the oral representations imputed to him and stoutly maintained his innocence on exactly the same theory which he maintained during the trial and maintains on this appeal. Thus, the following analysis of appellant's defense is set forth in the opening paragraph of the argument contained in his brief filed herein:

"Appellant was convicted of having committed four counts of false pretenses in that he made misrepresentations about the hauling business in which he was engaged in order to defraud prospective partners in that business. It is the contention of Appellant that any misrepresentations made during his negotiations with the alleged victims were inadvertent and innocent; that his statements to these alleged victims concerning his business were matters of honest opinion and good faith promises of future action on his part; that the alleged victims were not materially influenced by all of the representations; that the prosecution merely proved falsity and non-performance alone, but failed to prove an intent to defraud."

In the circumstances here detailed we feel *Dorado* and the cases following it have no application.

The judgment is affirmed.

Herndon, J., and Fleming, J., concurred.