Filed 6/15/16  P. v. Lack CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID JAMES LACK,<br><br>    Defendant and Appellant. | 2d Crim. No. B260164<br>(Super. Ct. No. 1335893)<br>(Santa Barbara County) |

David James Lack appeals from the judgment entered after a jury convicted him of one count of grand theft by embezzlement from an individual and two counts of grand theft by false pretenses from two banks.  (Pen. Code, § 487, subd. (a).)[1]  As to each count, the jury found true an allegation that the value of the property taken exceeded $200,000.  (§ 12022.6, subd. (a)(2).)  The jury also found true an aggravated white collar crime enhancement involving the taking of more than $500,000.  (§ 186.11, subds. (a)(1) & (2).)  Appellant was sentenced to prison for nine years, eight months.

Appellant contends that the trial court abused its discretion by excluding evidence of lending practices in the banking industry.  In addition, he contends that the evidence is insufficient to support his convictions.  We affirm.

---

[1]    Unless otherwise stated, all statutory references are to the Penal Code.

*Facts*

*Theft by Embezzlement from Mary Belle Snow*

Mary Belle Snow (Snow) and appellant were friends. Appellant told her that he was going to start a bank in Southern California and was looking for investors. He gave her a prospectus for the new bank, which was named Smart Federal, Inc. (Smart Federal). Snow decided to purchase 30,000 shares for $300,000. On March 3, 2008, she gave a check for that amount to appellant. The check was payable to Smart Federal. Appellant told her that he would deposit the check into an "escrow account until such time as the investors were put together, however many that would be, to take it to the next step."

On March 10, 2008, the $300,000 check was deposited into Smart Federal's bank account. Before the deposit, the account had a balance of only $25. After the deposit, two checks totaling $241,000 were drawn on Smart Federal's account and deposited into appellant's personal bank account. On April 21, 2008, the balance in Smart Federal's account was $8,232.45.

Appellant told Snow that he had taken her money. He said that he would "take the full responsibility for [her] $300,000" and was "working on replacing it." But Snow did not get her money back, and Smart Federal never opened for business.

*Theft by False Pretenses from Bank of Santa Barbara*

In April 2007 the Bank of Santa Barbara loaned appellant $700,000. Appellant's loan application misrepresented his financial situation. He said that he had assets totaling $2.05 million and no liabilities except an installment loan on an automobile with a balance of $15,773. In fact, appellant did not own the most valuable assets - a $1.3 million residence and $500,000 in real estate investments. He had a negative net worth of several hundred thousand dollars. Relying on appellant's personal financial statement, a bank employee recommended that the loan be approved. Later, the bank increased appellant's line of credit to $1.2 million. Appellant defaulted on the loan.

*Theft by False Pretenses from Rabobank*

In August 2007 Rabobank loaned appellant $500,000. The bank officer who approved the loan relied on appellant's personal financial statement, which falsely showed that he had assets of $2,542,500 and no liabilities. Appellant defaulted on the loan.

*The Trial Court Did Not Abuse Its Discretion*

*Under Evidence Code Section 352*

Appellant contends that the trial court abused its discretion under Evidence Code section 352 (section 352) by excluding evidence of lending practices in the banking industry. Section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Defense counsel sought to present evidence that the victim's banks had "act[ed] very much in accord with [the] . . . practice in the industry" of "not scrutinizing" and "not relying" on appellant's misrepresentations in his loan applications. Counsel stated: "All the unfortunate people who had houses and all of a sudden lost them and all the harm that was caused in this country occurred in large part because banks were saying, hey, we're not going to look closely. . . . You're a good customer. Just, you know, borrow the money. You'll be okay. You'll get out of it. . . . That was the practice in the industry." The banks "figured, well, we'll just keep [appellant] a float [*sic*] and everything will be fine. So they did not, in fact, rely on what he put in his [loan] applications." "The whole banking industry was based on the concept that if . . . you keep pumping money into businesses and homes as well, . . . it's going to work out."

The trial court replied that the jury "shouldn't hear about industry practices" because the "probative value [of this evidence] is far outweighed by the likelihood of confusing the issues and [causing] prejudice." The court explained: "I don't want this to be a trial regarding the whole industry, the mortgage crisis . . . . What's relevant is what happened here and not what the other institutions were doing . . . ." "[Y]our defense . . .

3

is they didn't rely because nobody in the industry was relying at that time. And so that's speculative . . . . And it will certainly consume a lot of time if we're going to have a trial about what was happening in the banking industry during that time."

"Rulings under Evidence Code section 352 are reviewed under an abuse of discretion standard, and a trial court's determination 'will not be overturned on appeal in the absence of a clear abuse of that discretion, upon a showing that the trial court's decision was palpably arbitrary, capricious, or patently absurd, and resulted in injury sufficiently grave as to amount to a miscarriage of justice.' [Citation.]" (*People v. Lamb* (2006) 136 Cal.App.4th 575, 582.)

Appellant failed to preserve the section 352 issue for appellate review because he did not make a valid offer of proof. Evidence Code section 354, subdivision (a) provides that a judgment shall not be reversed because of the erroneous exclusion of evidence unless the error resulted in a miscarriage of justice and "[t]he substance, purpose, and relevance of the excluded evidence was [*sic*] made known to the court by the questions asked, an offer of proof, or by any other means . . . ." "An offer of proof must consist of material that is admissible, and it must be specific in indicating the name of the witness and the purpose and content of the testimony to be elicited. [Citation.]" (*People v. Rodrigues* (1995) 8 Cal.4th 1060, 1176.) Appellant did not satisfy these requirements. He has left "us with a record that is all too uncertain to warrant reversal of the . . . judgment. . . . Given the vagueness of the record, it is impossible to judge whether [appellant's] evidence would have met the requirements for admissibility under the Evidence Code . . . . Likewise, it is impossible to determine whether a jury might have been influenced by such evidence." (*Id*., at p. 1177, fn. omitted.)

In any event, the trial court did not abuse its discretion. What mattered was not the purported "practice in the banking industry," but whether the banking officials in the instant case had relied on the misrepresentations in appellant's loan applications. The trial court reasonably concluded that the minimal probative value of evidence of the "practice in the banking industry" would be substantially outweighed by the probability that it would confuse the issues and "consume a lot of time."

4

*Substantial Evidence Supports Appellant's*

*Conviction of Theft by Embezzlement from Snow*

Appellant argues that the evidence is insufficient to support his conviction of theft by embezzlement from Snow because title to her funds was vested in Smart Federal and "it cannot be established that [he] acquired [Snow's] funds from a position of trust." "The elements of embezzlement are '1. An owner entrusted his/her property to the defendant; 2. The owner did so because he/she trusted the defendant; 3. The defendant fraudulently converted that property for his/her own benefit; [and] 4. When the defendant converted the property, he/she intended to deprive the owner of its use.' [Citation.]" (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 636-637.)

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Maciel* (2013) 57 Cal.4th 482, 514-515.) We " 'presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] . . . A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict. [Citation.]' [Citation.]" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

Substantial evidence supports appellant's conviction of theft by embezzlement from Snow. It is of no consequence whether Smart Federal technically acquired title to Snow's funds. Snow testified that on March 3, 2008, she had entrusted a $300,000 check to appellant in reliance upon his assurance that it would be deposited "into an escrow account" where the funds "would be secure and safe" until appellant had sufficient investors "to take it to the next step." Appellant breached Snow's trust by depositing the check into Smart Federal's account and subsequently transferring $241,000 of the funds into his personal bank account. By his actions, appellant committed embezzlement. "Embezzlement is the fraudulent appropriation of property by a person to

5

whom it has been [e]ntrusted." (§ 503.) "The gist of the offense is the appropriation to one's own use of property delivered to him for devotion to a specified purpose other than his own enjoyment of it. [Citations.]" (*People v. Hodges* (1957) 153 Cal.App.2d 788, 793.)

*Substantial Evidence Supports Appellant's*

*Convictions of Theft by False Pretenses from the Banks*

Appellant maintains that "the evidence was insufficient to establish two elements of the crime of theft by false pretenses[:] [his] intent to permanently deprive the banks of the money, and the banks' material reliance upon [his] personal financial statement in making the loan." The People were not required to prove an intent to permanently deprive the banks of the money. "The offense [of theft by false pretenses] requires only that '(1) the defendant made a false pretense or representation to the owner of property; (2) with the intent to defraud the owner of that property; and (3) the owner transferred the property to the defendant in reliance on the representation.' [Citation.]" (*People v. Williams* (2013) 57 Cal.4th 776, 787.) The offense "do[es] not require the intent to permanently deprive the owner of his property." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1248, fn. 5.) CALCRIM No. 1804, the jury instruction for theft by false pretenses, does not require proof of such an intent.[2]

Theft by false pretenses does require proof that the owner relied on the defendant's false representation. Appellant concedes that "[t]he evidence established that [he] misrepresented his ownership of real property." But he maintains that the banks "were not relying on a single piece of real property on a personal financial statement; they were relying on the health, strength and track record of [appellant's business,] Lack Construction." "The testimony of the various bank officers that they relied on appellant's personal financial statement, and ownership of real property, is at best hindsight."

---

[2] For the first time in his reply brief, appellant argues that the evidence is insufficient to show that he "submitted a financial statement with the requisite specific intent to defraud." "This claim is forfeited. 'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief . . . .' [Citation.]" (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218.) In any event, the claim is without merit.

6

The substantial evidence rule does not permit us to reject the bank officers' testimony as "hindsight." " ' "To warrant the rejection of the statements given by a witness who has been believed by the [trier of fact], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" . . . .' [Citation.]" (*People v. Barnes* (1986) 42 Cal.3d 284, 306.) Accordingly, the bank officers' testimony that they relied on appellant's misrepresentations is sufficient to support his convictions of theft by false pretenses from the banks.

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:

PERREN, J.

TANGEMAN, J.

7

Jean M. Dandona, Judge

Superior Court County of Santa Barbara

_____

Richard C. Gilman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Theresa A. Patterson, Deputy Attorney General, for Plaintiff and Respondent.